James A. CLANCY and Gertrude Clancy, trading as James A. Clancy and Company,

v.

BRUNSWICK–BALKE–COLLENDER COMPANY, Appellant.

No. 13465.

United States Court of Appeals. Third Circuit.

Argued April 7, 1961.

Decided May 25, 1961.

Philip H. Strubing, Philadelphia, Pa. (Francis E. Shields, David W. Scully, Pepper, Hamilton & Scheetz, Philadelphia, Pa., on the brief), for appellant.

Francis E. Marshall, Philadelphia, Pa. (George O. Philips, Philadelphia, Pa., Davis, Marshall & Crumlish, Philadelphia, Pa., on the brief), for appellees.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The only real problem on this appeal is whether the trial judge in his evidential rulings and jury instructions committed prejudicial error necessitating a new trial.

The litigation is for breach of contract. In 1928 plaintiff James A. Clancy, under an oral agreement with Horn Folding Partition Company, was appointed exclusive sales representative for Pennsylvania, Delaware and New Jersey by Horn of its gymnasium equipment products. In 1937 the agreement was reduced to writing and gave plaintiff certain exclusive Pennsylvania, New Jersey and Delaware territory. It contained the clause:

"This Sales Understanding shall continue in force from date noted until terminated for cause by either of the agreeing parties."

In February 1955, the territory was reduced by mutual agreement to eliminate three counties in Pennsylvania. Clancy had on January 1, 1944, formed a partnership with his wife and from that time the business continued under the partnership. Defendant succeeded the Horn Company on August 6, 1955. On June 10, 1955 defendant submitted to plaintiff firm a new form of agency agreement. The accompanying letter stated: "Of course this franchise rescinds all former franchises of any nature." The new form of agreement made the folding stages agency non-exclusive. There were other changes which need not be detailed, except the termination clause which provided for termination by either party without cause on sixty days notice to the other. The letter requested the plaintiff agency to sign the white copy of the franchise and return it keeping the blue copy. Clancy or the partnership never signed the agreement or returned it to defendant. The latter wrote regarding it on September 28, 1955. Clancy replied on October 10, 1955 objecting to the elimination of his exclusive selling rights to folding stages. He asked that the agency territory be expanded in both New Jersey and Delaware. There is testimony that Clancy endeavored to talk with defendant's representatives but they were allegedly too busy for this. Appellant would have it that plaintiff Clancy's evidence shows that his agency was deprived of its exclusive agency to sell folding stages. Actually Clancy there states that his requests to defendant for changes in its submitted new franchise were not granted. He was not asked and did not volunteer anything regarding whether he "acted only as non-exclusive agent" for the stages after the Brunswick letter of June 10, 1955.

On November 21, 1956 defendant wrote the Clancy agency saying:

"This letter will be notification to you that as of this date we are terminating our Manfacturers-Sales Agency Agreement, *dated October 22nd, 1937, between your office and the Horn Brothers Company and, subsequently, The Brunswick-Balke-Collender Company.*" [1] (Emphasis supplied).

The only reason named for termination was:

"Our decision to take this action is not a result of hurried thinking. On the contrary, both your and our offices have been quite concerned about the FGS (Folding Gymnasium Stages) results in your area for the past two years.

"I understand that you have been, for the past year, attempting to find someone suitable to work the school market, but have been unable to do so.

"We honestly believe that we have found the solution and hence we are making this change."

On June 13, 1957 the Clancy agency sued defendant for damages arising out of its alleged improper termination of the 1937 agreement. Brunswick in its answer made no reference to the 1955 franchise it had submitted or any contention that it had been substituted for the 1937 agreement. However, at the pretrial conference permission was sought by the defense and allowed by the court to amend its answer by adding a third defense reading:

"Paragraph 3. The sales understanding, Exhibit A to the complaint, was modified by the parties as a result of correspondence between June 10, 1955, and October 25, 1955, and plaintiffs' conduct during that period and thereafter. As a result of this modification, defendant's right to terminate plaintiffs' agency was made unconditional."

Appellant first argues that its 1955 proposal was substituted for the 1937 agreement. Alternatively it urges that by its proposal it offered a new contract which the agency is so clearly shown by its actions to have accepted, a directed verdict should have been allowed defendant.

■ As indicated by the fact statement there was strong evidence that the 1955 franchise was not substituted for that of 1937 and that there was no new contract acceptance by plaintiffs. A direction of verdict in favor of defendant on either ground would have been reversible error.

It is argued also that there should have been a direction of verdict in favor of the defendant under the 1937 agreement. The theory advanced is that though the agreement stated it could only be concluded for cause, nevertheless either party could terminate it for no cause at all after a reasonable time. The nineteen years of the 1937 agree-

---

1. The full text of the letter is:

"This letter will be notification to you that as of this date we are terminating our Manufacturers-Sales Agency Agreement, dated October 22nd, 1937, between your office and the Horn Brothers Company and, subsequently, The Brunswick-Balke-Collender Company.

"As of this date, we will accept no further quotation requests from your office.

"We will, however, protect you on all outstanding quotations in your possession at this time, through the terminus of the business day of January 31st, 1957.

"Our decision to take this action is not a result of hurried thinking. On the contrary, both your and our offices have been quite concerned about the FGS results in your area for the past two years.

"I understand that you have been, for the past year, attempting to find someone suitable to work the school market, but have been unable to do so.

"We honestly believe that we have found the solution and hence we are making this change.

"It is my sincere desire, Jim, that the severance of our business relationship will in no way hinder our friendship, which I have so much enjoyed during the past eight years.

"I wish to take this opportunity to wish you and your organization continued success in your endeavors."

ment is cited as a reasonable period for the life of the contract. The decision in Cummings v. Kelling Nut Co., 1951, 368 Pa. 448, 84 A.2d 323,[2] is named in support of this. The contract there was denominated by the court as an "experimental arrangement". The substantial nineteen year old working agreement between the parties that is before us presents an essentially different pattern.[3] The pertinent Pennsylvania authorities agree that the intention of the parties governs the type of agreement involved. Weidman v. United Cigar Stores Co., 1909, 223 Pa. 160, 72 A. 377; Slonaker v. P. G. Publishing Co., 1940, 338 Pa. 292, 13 A.2d 48. Whether under all the circumstances nineteen years was a reasonable time was for the jury not the court. Eastern Terminal Lumber Co. v. Stitzinger et al., 3 Cir., 1929, 35 F.2d 333. Whether indeed the parties had intended this agreement to be cancelable upon reasonable notice could not be determined by the trial court against the agency as a matter of law in the face of the record evidence to the contrary.

Finally, on this phase of the appeal, Brunswick's assertion that it was entitled to a direction of verdict as a matter of law on the ground that the undisputed evidence in plaintiffs' case showed that Brunswick had "cause" to terminate the agency, is without merit and needs no discussion.

This brings us to appellant's assertion that the trial judge refused to submit " * * * to the jury, the evidence supporting defendant's principal defense, i. e., that the 1955 agreement had supplanted the 1937 agreement."

■ There was no mention of or reference to any 1955 agreement in the original answer. On September 28, 1959, over two years after suit had been commenced, the pretrial order allowed the filing of a third defense which is quoted above. That alleged no supplanting of the 1937 agreement but only the modification of one specific part thereof i. e. the termination of the agency. This was said to have transpired as the result of correspondence between the parties and plaintiffs' conduct during the correspondence period. At the trial the defense specifically broadened its theory by stating that the agency actions with respect to the proposed 1955 franchise for all purposes substituted it in place of the 1937 agreement.

Admittedly the 1955 franchise was never signed by the agency. The defense contention is that it was in effect accepted. The supporting argument claims plaintiffs objected to and requested changes in only three of the agreement's provisions. The defense urges that the necessary inference from this is that the other conditions, including termination without cause, were satisfactory to plaintiffs. It is stated that after plaintiffs' request for the three changes was turned down, plaintiffs acted in accordance with those three provisions. And, maintains defendant, this shows that plaintiffs accepted them and the entire contract. The factual basis of defendant's thought depends on Clancy's testimony at the trial. He was asked on cross-examination if his requests were granted. He answered "No". He was asked if any changes were made in the form of the 1955 franchise. He answered "No". He was asked if thereafter he served the territory described in the 1955 franchise agreement. He answered "We did". There was no letter from defendant to Clancy rejecting his requests. There was no evidence from the defense of a refusal of the requests. Clancy's two requests for territory were for territory which was *additional* to that granted by his 1937 franchise. These requests simply remained unanswered by Brunswick. There remained his request for an ex-

2. The 1937 contract was accepted in Pennsylvania. Both sides concede that the law of that state governs its construction.

3. Lightcap v. Keaggy, 1937, 128 Pa.Super. 348, 194 A. 347, which is also relied on by appellant is sui generis on its facts and furnishes no help in this problem.

clusive agency on the folding stages as the only item asked for which had been curtailed by the 1955 franchise. Regarding this Brunswick never told Clancy his agency could not have it. It merely did not advise him at all concerning it.

Returning to the so-called letter of cancellation of November 21, 1956, as we have indicated, that purported to cancel the 1937, Horn Brothers Company, agreement and nothing else. Nowhere in the letter is reference to the 1937 franchise as supplanted or amended by that of 1955. There is palpably no mistake in the letter in the naming of the 1937 contract instead of the 1955 franchise. This must follow because only the 1937 document had Horn Brothers Company as a party. In 1955, Brunswick, having succeeded Horn, was the appointing principal. So all that the Brunswick letter does on its face is purport to cancel the 1937 agreement by itself. It must be emphasized at this point that there is no reasonable explanation offered by appellant on appeal or in the trial record to account for the fact that it never orally or in writing did anything about cancelling either the 1955 franchise or the 1937 franchise as amended by the 1955 contract, after its letter of November 21, 1956.

■ Appellant complains that the trial court refused to admit the entire 1955 agreement exhibit it proffered, into evidence. That exhibit consisted of a folder on the inside pages of which was printed the form of franchise. The folder contained several loose sheets which are titled "Horn Division Sales Agents" and upon which appear the Clancy Agency's name, some of its personnel and Pennsylvania, Delaware and New Jersey territory. There are also maps of those states.

Plaintiffs objected to the whole of the booklet and its contents going into evidence. They had no objection to the defense using the 1955 franchise and referring to the all important cancellation clause which defendant's attorney on re-cross-examination had insisted Clancy read into the record.

The court ruled:

"I will not admit that whole document in evidence, but the part that refers to this change of territory and the actions of the plaintiff with respect to that change, as indicating acceptance, I will permit it to go into evidence, and you may submit a perfectly legitimate argument to the jury."

It further said:

"You see, reference has been made to the attempt to change that agreement, and Mr. Clancy said he did not sign it and wouldn't sign it, but he did operate under two suggestions with reference to the territory. Now, I want that to go to the jury * * *."

The defense thoroughly argued to the jury its vital proposition that Clancy, by his conduct regarding the change and the additions he had suggested, had acquiesced in the 1955 agreement, particularly in its termination without cause provision. The attorney said:

"The defendant says, first, that because of certain events that occurred which I will mention to you in a moment, which the Judge will talk to you about in his charge, the contract was amended so that that termination for cause provision was eliminated from the contract, and if you find as the judge charges you and in accordance with his instructions, that the contract was amended so that the 'cause' provision is out, that's the end of the case, because the defendant had a right to terminate whether he had a cause or not.

* * * * * *

"Now, on the amendment to the contract, the rule is, and I think his Honor will charge you, that if I have a contract with you and I desire to amend it, and I send you a new contract to take its place, and you say well, I protest about say two out of five provisions, and I don't protest as to the others, and then I say, well, I am sorry, but the contract has

to stand as it is written, and then you go ahead and act under it, you have accepted that amendment. Whether or not you signed the contract, the signature is a formality, a contract can be amended by spoken words. It does not have to be in writing, it can be amended by a writing that is signed or it can be amended by the conduct of the parties, and we say here that when the new standard form of Brunswick agreement which did not have a termination for cause, it just had the right of either party to terminate when they wanted to, when that was sent to him, he protested two items. You shall see in the correspondence he says, 'I don't like the change in territory, and I don't like the fact you haven't given me an exclusive agency on folding stages. Will you please change those two items.' He didn't object to the new termination clause. They came back and said, 'we are sorry, we won't make the change in the territory. The territory as stated in the new contract will have to stand.' He then went ahead and served that territory. So what he has done then, he has said, "the contract is satisfactory to me, in effect, except for two provisions. I asked you to change the two provisions, and they said, 'no, I'm sorry, we won't do it.' " and then he goes ahead and acts under it, we say it is an amendment and his Honor will charge you, you can find it is an amendment, and that is the end of the case."

The trial judge's original material in his charge, with the exception of one reference, intentionally dealt solely with general trial points. His reason for this, as he stated, was because the parties had submitted *"very excellent points for charge [otherwise] I would have had in my own general remarks, to cover them all. And they have done it so well, they hit the nail right on the head, and I am taking their language for these various points."* (Emphasis supplied).

The judge proceeded to charge plaintiffs' points. Taking up those of the defendant, he charged Number Two exactly as presented, saying:

"The first problem for you to determine is whether the sales understanding of October 22, 1957, on which plaintiff relies, was still in effect in November of 1956, or whether it had been amended by the actions of the parties with respect to the Brunswick Sales Agent Franchise Agreement sent to plaintiff under date of June 10, 1955."

Next he charged Number Three in the defense language:

"A contract such as the sales understanding of 1957 may be amended by agreement of the parties. Such agreement of the parties may be oral or in writing, or partly oral and partly in writing or may be evidenced by the conduct of the parties, without any words, written or spoken."

Inadvertently the judge had said "1957" instead of "1937". He corrected this and recharged the above quoted third request.

On the second branch of the defense the court charged if the jury found "that the 1937 agreement was not amended by the conduct of the parties, [it] must then decide what the termination clause of the 1937 agreement means and whether defendant complied with its terms when it terminated plaintiff's agency." This was in the defense language as were the remaining defense points charged.

After the court concluded charging the defense points, it excused the jury to allow counsel to note their objections to the charge.

The defense attorney said:

"If your Honor please, I would like to take one or two exceptions to your Honor's charge. First, I would like to except to the fact you have left the question of the amendment of October 22, 1937 sales understanding to the jury without explaining to the jury what factors

they should take into account in determining whether there was such an amendment. I also couple that with an exception to your opening statement,[4] that the whole case depends on the cause provision in the 1937 agreement."

The court replied:

"Well, if you are going to take it literally, that's a question in this case, isn't it? That is the principal cause on which it revolves."

The defense attorney asked that the point be clarified.

The court recalled the jury and said:

"Members of the jury, it has been suggested to me that possibly I restricted too much the area of conflict, possible conflict, by saying that the whole thing revolved around this question of cause. Of course, there are other elements in this case, and all taken together constitute the case, every bit of information that was given by the witnesses, when taken together in its entirety, constitute this case, and the whole case is before you. When I said that the principal thing, the whole thing revolved around the question of cause, I meant it in a general sense and not in a restricted sense at all. I will admit that possibly that was too restricted, and was more in the language of the layman than the language of the judge. Now, I want you to remember all you heard constitutes the case."

■ There was no objection to or remark on this. It is stated that counsel was not required to indulge in reiterative insistence in order to preserve defendant's rights. Our Moreau v. Pennsylvania R. Co., 3 Cir., 1948, 166 F.2d 543, 545 and Green v. Reading Co., 3 Cir., 1950, 183 F.2d 716, 719 are cited for this. They do not apply. In Moreau, the trial judge never took any action or position after the original objection. In Green, the defendant's stand was construed to be that it had no suggestion for the correction of the charge other than those contained in its requests. In this instance the court not only gladly corrected its charge at the suggestion of the defense but delivered verbatim defendant's points above quoted on the issue.

■ Although the charge was not systematically organized and presented the defense that the 1937 contract had been amended by plaintiff's acceptance of the 1955 proposal through conduct was clearly before the jury. The court stated this as part of its charge in the very words of the defense. The alleged amendment depended upon by the defense, the change from cause to at will for termination of the franchise, was in evidence. It was read into the record by plaintiff, James A. Clancy, on cross-examination. The court, quite properly, refused to charge the fourth request of the defendant [5] in which the questionable conclusion depended on the misstated and omitted facts.

■■ The court had told the jury the 1937 contract could have been amended by the conduct of the parties. It could have and should have detailed the defense evidential foundation for its thesis that the plaintiffs by their conduct had

4. What the court had said in the opening statement was:
   "The contract was to run until terminated for cause by either of the contracting parties. Now, your whole case revolves around that; whether this agreement was terminated for cause."

5. "If you find, therefore, that after receipt of the Franchise Agreement of 1955, plaintiff protested the territory changes provided therein and also protested that plaintiff's right to sell folding stages for the defendant was not exclusive, but that, after defendant had refused to accede to plaintiff's protests, plaintiff proceeded to serve the territory provided for in the 1955 Agreement rather than the territory provided in the 1937 Agreement, you should find that the plaintiff accepted the amended contract by his conduct, even though he never formally signed it. Your verdict would then be for the defendant, because the 1955 agreement gave either party the right to terminate at any time."

accepted the 1955 franchise and the contrary position of the agency. However, it left that up to the summation of counsel who handled it in lawyerlike fashion. The follow up to this by the judge in charging requests No. 2 and No. 3 of the defendant gave the jury substantial guidance on the question. Taken as a whole, the court's instructions were not calculated to mislead the jury regarding the evidence necessary to support the defense. Nor was the general effect of the charge to withdraw from the jury's consideration material evidence. It did unmistakably instruct the jury on this problem, and, under the charge it was only in the event the jury did not find the agency's conduct as claimed that it could go on to the cause provision of the 1937 agreement.

■ Appellant also objects to what the trial court told the jury in defining "cause" as related to the termination of the 1937 contract. The judge used both plaintiffs' and defendant's points for charge in outlining this. He first said that " * * * defendant must convince you that it had a fair and honest cause or sufficient reason regulated by good faith and reasonable grounds upon which to base the termination of the sales understanding." Appellant can have no real quarrel with that statement. It is almost identical to the principle appearing in Quick v. Southern Churchman Co., 1938, 171 Va. 403, 199 S.E. 489, a decision relied on by appellant.

■ The court next stated "The words 'for cause' in the phrase 'removal or termination for cause' have been held to be main reasons which the law and sound public policy recognize as sufficient warrant for removal or termination; that is, 'legal cause' and not merely a cause which the appointing power in the exercise of its discretion may deem sufficient."[6] While this comment (which is what it amounted to) might better not have been made, it is not reversible er-

ror. In the light of what went before it and what followed, no appreciable harm could have reasonably ensued to defendant owing to it. The court made no attempt to restrict the jury's consideration of "cause" to "legal cause". To the contrary, the charge had already plainly outlined causes outside of legal cause which were sufficient to justify ending the franchise. Immediately thereafter the court laid down a rigorous standard of performance outside of legal cause for the agency which the jury had to find the agency had satisfied before it could decide that defendant did not have cause to terminate the agreement. The court said:

> "If you find that James A. Clancy and Company performed its obligations to the defendant in an efficient, reasonable, workmanlike manner, and did everything reasonably in their power to promote the sale of the defendant's products, you would be justified in finding that the defendant did not have cause for terminating the sales understanding which existed between them."

Following that, the court charged all three of defendant's requests on this subject, saying:

> " 'For cause' means not arbitrarily or capriciously, but rather in good faith.

> "Plaintiff has the burden of proving by a preponderance of the evidence that he performed substantially all of his obligations to the defendant as a sales agent and that termination of the sales agency was arbitrary or capricious on the part of the defendant.

> "Unless you find that defendant terminated the sales agency for a reason not properly related to plaintiff's performance under the agreement, then your verdict must be for the defendant."

---

6. The court's statement with the exception of the clause "or termination" was taken from State ex rel. Nagle v. Sullivan, 1935, 98 Mont. 425, 40 P.2d 995, 99 A.L.R. 321 as adopted in State ex rel. Matson v. O'Hern, 1937, 104 Mont. 126, 65 P.2d 618, 623. Both those decisions were in quo warranto matters.

The above was the final word to the jury from the court in explaining what "for cause" meant in the 1937 franchise. It illustrated exactly the defense construction of the phrase.[7] It directly told the jury what the plaintiffs' burden was i. e. "* * * proving by a preponderance of the evidence that he performed substantially all of his obligations to the defendant as a sales agent and that termination of the sales agency was arbitrary or capricious on the part of the defendant." And the court categorically directed the jury that "Unless you find that defendant terminated the sales agency for a reason not properly related to plaintiffs' performance under the agreement, then your verdict must be for the defendant."

It is impossible to fairly conclude from all of the above that the early reference to legal cause might have materially confused the jury. If anything the defendant received quite the best of it under the impact of its own narrow requests which closed that branch of the charge.

Appellant's last objection is to the admission in evidence of testimony concerning the life expectancy of James A. Clancy.

Mr. Clancy and his wife are suing as partners. And the effect of the former's testimony is that the partnership took over his business in 1944. This was conceded by defendant's attorney in the course of the trial. However, the 1937 Horn contract was with Clancy individually. That was never changed by Horn after the partnership came into being. In 1952 when defendant took over, it merely wrote "James A. Clancy & Company" that it "* * * would like you to continue with us in the same fashion you have operated with the Horn Brothers Company." There seems no question of the partnership's right to any profits obtaining from the 1937 franchise. But under the facts it does not necessarily follow that dissolution of the partnership during Mr. Clancy's lifetime would relieve either Clancy or the defendant of their rights and liabilities under the agreement.

The jury was instructed concerning the life expectancy evidence that "It is not a conclusion that you are bound to take, but if it is helpful to you, you weigh it bearing in mind what your own knowledge and common sense teach you and what we have told you with reference to its legal status." The court had told the jury earlier that life expectancy calculation "even at best is no more than a scientific guess." Clancy's life expectancy was given as in excess of sixteen years. The proofs were that the plaintiffs' loss was approximately $10,000 a year. The verdict was in the sum of $50,000. It would seem that the jury paid little if any attention to the life expectancy proof in arriving at its decision. From the record the evidence had some relevancy and was not improperly allowed.

The record further reveals that plaintiffs' case as it went to the jury was very strong on the merits. In the face of the evidence of loss other than the life expectancy testimony the amount of the verdict was conservative. There is no major trial error.

The judgment of the district court will be affirmed.

---

7. In summation the defense attorney said: "What his Honor is going to tell you is cause, is that the defendant must have acted in good faith, it must have had a reason that it believed to justify the termination, it must have acted in good faith, it must not have been arbitrary, capricious, just for no reason at all, terminate the agency. Now, that is what cause is, as I think your Honor will tell you."