## Slonaker, Appellant, *v.* P. G. Publishing Company.

Argued March 21, 1940. Before SCHAFFER, C. J., MAXEY, DREW, STERN, BARNES and PATTERSON, JJ.

*M. H. Hirschfield,* of *McCrady, McClure, Nicklas & Hirschfield,* for appellant.

*Lawrence D. Blair,* with him *M. H. Ewing* and *Moorhead & Knox,* for appellee.

OPINION BY MR. JUSTICE STERN, May 6, 1940:

In 1930 one Leo T. Bowman conducted a newspaper distributing business in the Dormont district of Allegheny County. He was the sole distributor there of the Pittsburgh Post-Gazette, a daily newspaper published by defendant company. He offered to sell to plaintiff the part of his business which related to the Post-Gazette. Plaintiff visited Raymond Foudray, defendant's circulation manager, and had a conversation with him upon which he bases his cause of action in the present suit. According to plaintiff's version of the interview, he wanted to find out from Foudray "whether it would be all right to buy the news agency from Mr. Bowman." He told Foudray that his motive in coming to see him was "about buying Mr. Bowman's business and the exclusive right to handle the Post-Gazette in Dormont," that the price involved was about $4,600, which he thought was "a lot of money to invest in the newspaper game." Foudray replied: "It is not so much money when you are buying the exclusive agency of the Post-

Gazette in Dormont," adding that plaintiff "would be the only one up there handling the Post-Gazette," that "there is a possibility of the Post-Gazette coming out with a Sunday paper and if that is the case it will increase your earning power and increase the resale value," that plaintiff "couldn't handle any other paper except the Post-Gazette," and that at any time he wanted to sell his business he could do so and Foudray would help him sell it. Plaintiff asked whether "the agent receives a car allowance," and was answered in the affirmative. A discussion followed as to the amount, which was settled at a subsequent interview by Foudray agreeing to give plaintiff $30 a week car allowance in case he bought the business. A couple of weeks later plaintiff made the deal with Bowman and for more than six years thereafter acted as sole distributor for the Post-Gazette in the Dormont district.

In September, 1936, plaintiff publicly advertised the business for sale. When this came to Foudray's attention he told plaintiff he could not sell the exclusive right to handle the Post-Gazette in that district, and shortly afterwards defendant company refused to sell its newspapers to plaintiff and began making distribution in Dormont through its own employees.

The present suit is to recover the sum of $4,000 alleged by plaintiff to be the fair and reasonable value of his business of which he claims to have been deprived by defendant, together with the sum of $2,010 alleged to be due for unpaid car allowance. The jury returned a verdict for $4,252.53, but the court entered judgment for defendant n. o. v. Plaintiff appeals. His theory, as set forth in his statement of claim, is that his conversation with Foudray constituted a contract between him and defendant whereby, if he would purchase Bowman's business for $4,600, defendant would, as long as he owned and operated the business, give him the exclusive right to purchase its newspapers for resale and distribution in the Dormont district at the rate of $2.25 per

hundred papers, and would pay him $30 a week as car allowance, and, further, that he would have the right to resell the business at any time, and if and when he desired to sell it defendant company would assist him to do so in every way within its power.

Doubt immediately arises as to whether Foudray's remarks established a contract, or whether they amounted to nothing more than advice given to plaintiff at his own request in regard to the desirability of his proposed purchase from Bowman, with an accompanying expression of encouragement and good will. Viewing them as effecting a contractual obligation, as apparently defendant is willing to concede, they nevertheless fall far short of the scope attributed to them by plaintiff and necessary to support his cause of action. They do not contain an intimation, much less an assurance, that if plaintiff bought Bowman's business his right to act as sole distributor in the Dormont district would be continued for any definite length of time. According to plaintiff's interpretation Foudray contractually obligated defendant company to vest in plaintiff, who was then twenty-five years of age, an exclusive agency as long as he cared to exercise it,—even for life if he so desired. It might be asked in this connection whether a resale would carry with it a similar measure of duration and so on in perpetuity to all future assignees, or whether the agency in the hands of a purchaser from plaintiff would be reducible, at the moment of purchase, to one terminable at the will of defendant. Obviously, all that could reasonably be inferred from what Foudray said is that if plaintiff at any time desired to sell the agency he could do so,—his equipment, list of customers, and general good will,—and, to that end, defendant would coöperate and help him find a desirable purchaser, just as it then regarded plaintiff as a desirable person to purchase the agency from Bowman, but there was no suggestion that defendant would give to plaintiff, or to any purchaser from him, an irrevocable grant of the

right to buy and distribute the Post-Gazette in the Dormont district. To constitute a unilateral commitment of that magnitude there would be required language of far more precise and unmistakable character.

It was said by the present Chief Justice in *Machen v. Budd Wheel Co.,* 294 Pa. 69, 77, of cases involving indefinite agreements of this nature, that "Precedents do not cut a great figure in such an inquiry. . . . They are like precedents in will cases. . . . The language used in each instance is different, and so are the circumstances." The general rule is that when a contract provides that one party shall render service to another, or shall act as his agent, or shall have exclusive sales rights within certain territory, but does not specify a definite time or prescribe conditions which shall determine the duration of the relation, the contract may be terminated by either party at will: *Coffin v. Landis,* 46 Pa. 426; *Trainer v. Laird,* 320 Pa. 414; *Press Publishing Co. v. Reading News Agency,* 44 Pa. Superior Ct. 428, 433; *Willcox & Gibbs Co. v. Ewing,* 141 U. S. 627. It is true that such a result does not follow in every instance, because it is the intention of the parties which is the ultimate guide, and, in order to ascertain that intention, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement. Thus contracts which do not fix a definite time for the duration of the relationship which they create are sometimes construed as providing for a reasonable time or some particular period inferred from the nature and circumstances of the undertaking. Illustrations are to be found in *Weidman v. United Cigar Stores Co.,* 223 Pa. 160, *Nolle v. Mutual Union Brewing Co.,* 264 Pa. 534, and *Rossmassler v. Spielberger,* 270 Pa. 30; see also 4 Williston on Contracts (rev. ed.), section 1027A (3), p. 2852. But, even if such principles of interpretation be applied to the alleged oral agreement in the present case, it is impossible to read into it any in-

tention, express or implied, on the part of defendant to contract with plaintiff that if the latter decided to buy the Bowman agency defendant would obligate itself to allow plaintiff to conduct the business permanently or until he desired to resell it, with the necessary implication that in case of a resale defendant would be bound to recognize in the purchaser a right to the continuation of the exclusive agency. Nor could plaintiff fairly have derived from his conversation with Foudray any such impression. The court below was, therefore, right in holding that the verdict in favor of plaintiff could not be sustained.

As to the item of "car allowance," it appears that this was based upon a custom in the trade and represented a sum to be paid weekly to plaintiff to compensate him for the use of his equipment and time in making delivery of defendant's newspapers from its place of business or other points designated by it to the respective distributing points at which plaintiff conducted his business. It was thus merely an incident of the distributorship. Plaintiff testified that the original allowance of $30 was reduced by defendant at various times during the depression period, first to $25, then to $23.75, then to $22.50, and finally to $15 per week, but his own testimony indicates that he acquiesced in these reductions as they were made. If the agency relation was terminable by either plaintiff or defendant the latter could permit it to continue on such modified terms as it might designate from time to time: see *Trainer v. Laird*, 320 Pa. 414.

Defendant maintains that, if the conversation between plaintiff and Foudray were to be construed as granting to plaintiff the exclusive right to buy and to resell defendant's newspapers in the Dormont district for life or as long as he desired to retain the right, the making of such a contract would have been beyond both the actual and the apparent authority of Foudray as circulation manager. There is much to be said in support of this

contention: See *Seiss v. McClintic-Marshall Corp.*, 324 Pa. 201; *Heaman v. E. N. Rowell Co., Inc.*, 261 N. Y. 229, 185 N. E. 83. It is unnecessary to discuss it, however, in view of the conclusion we have reached in regard to the extent of defendant's obligation.

Judgment affirmed.