## Cummings v. Kelling Nut Company, Appellant.

Argued October 1, 1951. Before DREW, C. J., STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*William H. Eckert,* with him *William K. Unverzagt* and *Smith, Buchanan, Ingersoll, Rodewald & Eckert,* for appellant.

*William J. Kenney,* with him *Harton S. Semple,* and *Rose, Eichenauer & Rose,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 13, 1951:

The plaintiff, John A. Cummings, instituted this action in assumpsit against The Kelling Nut Company, defendant, for remuneration allegedly due him under an

oral contract of employment. A jury rendered a verdict for the plaintiff in the sum of $3,500, and the court below, refusing defendant's motion for judgment *non obstante veredicto,* entered judgment on the verdict, from which this appeal is taken.

In March of 1934 plaintiff was employed orally by the defendant as a salesman for its product which consisted of processed assorted nuts, vended from electrical display cases which were placed with the retailer. He was to receive weekly commissions on rentals charged for the cases and on the gross sales of all nuts. His traveling expenses were his own obligation. Plaintiff was a graduate pharmacist who was engaged in selling a line of chocolates in the same territory assigned to him by the defendant, namely, western Pennsylvania and northern West Virginia. No period of employment was specified and he was permitted to continue his selling line of chocolates while in defendant's employ. After continuing in this employment for nine years, in March of 1943 he was discharged for reasons not related to the performance of his duties. The defendant by written notice discontinued the services of all of its salesmen as of March 29, 1943 with salary payable until April 10, 1943. This notice received by plaintiff, in substance and effect, gave as a reason for the company's action, the decrease in its manufacture and output occasioned by wartime restrictions imposed by the Office of Price Administration.

Plaintiff admits being fully paid for his services up to the date of his discharge and his suit is for commissions which he would have earned if he had not been discharged. He claims that his earnings in the first years of his employment were relatively small in comparison with his expenditures of time and money and that it was the intention of the parties that the employment continue for such a reasonable time as would en-

able plaintiff to be fairly compensated for the services and money he had expended in the furtherance of defendant's business. Kelling, the president of the defendant company, testified that he told plaintiff that the latter would be free to leave defendant at any time that he chose and that defendant could terminate his services at any time it chose and that no specific time was stated as to how long plaintiff should be employed. We are obliged, however, because of the verdict in his favor, to consider all facts and inferences from facts relating to the issues involved, most favorably to the plaintiff.

Plaintiff testified that when he interviewed Kelling, the defendant's president, the latter "admitted that their business was very small at this time but a salesman coming with them would be building the business for himself; that the remuneration the first few years might not amount to much but in time I would be able to build a foundation for the future that would be just the same as being in business for myself without investment."; that he, plaintiff, said he was interested but couldn't possibly give up the line that he had with the Durand Company, manufacturer of chocolates; that Kelling then said "That is perfectly all right. We have other men in the South that have the same arrangement with us and we will go along and see how this works out."

The general rule is that when a contract provides that one party shall render services to another, or shall act as an agent, or shall have exclusive sales rights within certain territory, but does not specify a definite time or prescribe conditions which shall determine the duration of the relation, the contract may be terminated by either party at will: *Coffin v. Landis,* 46 Pa. 426; *Weidman v. United Cigar Stores Company,* 223 Pa. 160, 72 A. 377; *Jones v. Pittsburgh Mercantile Co.,* 295 Pa.

219, 145 A. 80; *Slonaker v. P. G. Publishing Company,* 338 Pa. 292, 13 A. 2d 48; *Price v. Confair,* 366 Pa. 538, 79 A. 2d 224; *Lucacher v. Kerson,* 158 Pa. Superior Ct. 437, 45 A. 2d 245. The burden is on the plaintiff in such cases to overcome the presumption by showing facts and circumstances establishing some tenure of employment: *Jones v. Pittsburgh Mercantile Co.,* supra. The intention of the parties governs. One relying on the contract as providing for a reasonable length of time must establish something in the nature and circumstances of the undertaking which would create the inference that a definite or reasonable period of employment was actually contemplated by the parties.

According to plaintiff's testimony, in consummating the employment defendant's president Kelling, after agreeing that plaintiff retain his Durand Company chocolate line, said "we will go along and see how this works out." This certainly indicated an experimental arrangement with either party free to terminate the employment at will. Plaintiff principally relies upon the above quoted statement made by Kelling during the course of the interview that the remuneration the first few years might not amount to much but in time plaintiff would be able to build a foundation for the future that would be just the same as being in business for himself.

Plaintiff would have this statement interpreted as a promise or guarantee that he would be retained until he had currently recovered by way of commissions remuneration over and above his traveling expenses sufficient to compensate him not only for present efforts but for his past efforts and expenses in the development of his territory. We cannot agree with such contention. Plaintiff undertook the employment upon its prospects and agreed to pay his own traveling expenses. The statement made by Kelling was nothing more than a

"puffing" of the prospects. Employment is generally undertaken because of anticipated success therein and it is customary for the employer to paint a bright picture of future possibilities.

If such representations by the employer were to create an implied promise of continuous employment over any period of time, practically no employment would be terminable at will. If the employe obtains no promise of employment for a definite or reasonable length of time, he gambles on his retention and the probability that the employment will be continued if his services are satisfactory. On the other hand, he is free at any time to quit the job. Here plaintiff was retained and remained in his employment for nine years and in 1943 until his discharge in March of that year, his net earnings were at the rate of $550 per month. This justified defendant's prediction of lucrative possibilities in the undertaking but does not convert the prediction into a promise—especially such a promise as plaintiff asserts. Plaintiff's claim of continuity of employment would be more plausible if he had been required to forfeit the livelihood apparently obtained from his chocolate line. At no time during the employment interview did plaintiff request or suggest any period of employment. It is a fair conclusion that the parties designedly abstained from binding themselves to any permanency of the relationship, thus leaving plaintiff free to terminate the employment if it proved unpromising or too arduous when added to his other employment, and on the other hand leaving the defendant free to terminate the employment if plaintiff proved inefficient. At any rate there was insufficient proof of a mutual understanding to the contrary, and the jury should not have been permitted to render a verdict for plaintiff based at best upon a conjectural possibility of intention.

In *Slonaker v. P. G. Publishing Company,* supra, plaintiff before acquiring for $4,600 the sole distribution rights of defendant's newspaper in a certain district from the then distributor, consulted with and was told by the defendant that the price was not too much for the purchase of the exclusive agency involved, that there was possibility of defendant coming out with a Sunday paper that would increase plaintiff's earning power and increase the sale value, and that if plaintiff at any time wanted to sell the business, he could do so and defendant would help him sell it. Plaintiff thereupon proceeded with the purchase. Thereafter he advertised it for sale. Defendant when it learned of this, told plaintiff he couldn't sell the exclusive right to handle the newspaper, refused to continue its sale of newspapers to plaintiff and began making distribution through its own employes.

This Court held that assuming the existence of a contract between plaintiff and defendant, the representations by defendant did not prevent the latter from discontinuing plaintiff's agency. As in the present case, the representations were designed to induce the undertaking but were not of a character to impose any obligation as to the duration of the relationship between the parties.

Strongly militating against plaintiff's contention are letters written by him to the defendant company following his discharge. In plaintiff's reply to the notice of discharge sent him by defendant, he stated that he supposed that ". . . we all expected changes due to the war . . .". He could not have expected a change if he had a contractual right to continue in the defendant's employ. In a later letter to defendant he stated that he ". . . would be willing to go along on the percentage basis given . . ." until it was seen what would come out of the governmental restrictions. An expression of a

willingness to go along would hardly come from one with a contractual right to go along. In a letter of May 10, 1943 to Kelling, after referring to the assurance given by Kelling that he was building a business for himself, plaintiff stated, "Am only asking here what other legitimate houses are practicing, as the other salesmen that I have contacted are receiving their commissions altho' they are not covering their territories." It is hardly conceivable, if plaintiff had a contractual right to continue in the employment as he claims, that he would not have asserted that right rather than to say that he was only asking what other legitimate houses were practicing. Appropriate in this connection is the case of *McNeely v. Bookmyer,* 292 Pa. 12, 140 A. 542. There an action was brought on an alleged contract to repurchase stock. The lower court entered judgment *non obstante veredicto* for the defendant after a verdict for the plaintiff, and in affirming that judgment this Court said: "To our mind the fatal weakness in plaintiff's case was in the letters which he wrote disclosing, as they do, his dissatisfaction with his bargain, but never a word as to the agreement which he set up in the last of them four years after acquiring the stock. Had there been such an undertaking as he now alleges, it is inconceivable that, instead of asking defendant to aid him in disposing of the stock, he would not have called upon him to make good his agreement to take it himself."

The lower court quotes as follows from 4 Williston on Contracts (Rev. Ed.) §1027-A (p. 2847 et seq.) : " 'It is the settled law of agency that if the agent or employee furnishes a consideration in addition to his mere services, he is deemed to have purchased the employment for at least a reasonable period where the duration of the employment is not otherwise defined.' ", and sets forth Comment c of Section 442 in the Restatement of

Agency which provides: " 'If the principal receives for his promise to employ the agent consideration other than a mere promise by the agent to serve, and no time is specified by the terms of the agreement, the principal's promise is interpreted as a promise to employ the agent for a time which is reasonable in view of the purposes of the party giving the consideration.' ". The court then proceeds to state: "This case falls within the foregoing rules. This was not a mere employment contract. Additional consideration is involved beyond the services to be rendered and the commissions to be paid."

We find no consideration given by the plaintiff beyond the services necessary to the performance of his duties. The learned lower court held that the jury was warranted in finding three items of consideration, one that plaintiff had an asset which defendant desired and upon which it capitalized, namely, an acquaintance with the drug trade within the designated territory. To hold that qualification for employment overcomes the presumption of law that an employment where no time is stated is an employment at will would effectively nullify the presumption, because every employe has some qualifications or else he would not have been hired. We can find no authority to sustain the proposition that qualification for employment constitutes consideration for employment or overcomes the presumption that an employment is terminable at the will of either party. The second item of consideration referred to by the court is that plaintiff was required to and did dispense with all other lines he was previously handling except the line of chocolates. Unfortunately, the court fell into factual error here because there is no testimony that plaintiff previously handled any sales line other than the chocolate line of the Durand Company which he was permitted to keep and which he in fact continued to handle throughout his employment

with the defendant. He gave up nothing. The third item of consideration relied upon by the court is that plaintiff had to invest his time and money for traveling expenses, not entirely for present benefits, but for adequate compensation to be realized in the future by way of commissions or repeat orders secured with little, if any, additional effort on the part of the plaintiff. The time and money which plaintiff invested simply constituted performance of the services which he was engaged to perform.

Whether or not it was customary for a salesman in an undertaking of this character to receive his traveling expenses does not appear, nor whether plaintiff received traveling expenses from the Durand Company in covering the same territory in selling chocolates. In any event he undertook his employment with defendant solely on a commission basis without any allowance for expenses. Practically all employment involves an expenditure of time and money for traveling. If this could constitute consideration generating a contract for a sustained period, again there could be practically no employment terminable at will.

We have carefully reviewed the record in this case, and after considering all the facts and inferences therefrom favorably to the plaintiff, are of the opinion that the evidence was insufficient to permit the jury to find that the plaintiff's employment was other than one terminable at will.

Judgment reversed and here entered for defendant.

---

DISSENTING OPINION BY MR. JUSTICE LADNER:

I dissent from the judgment of the majority because I believe with the learned trial judge that this case falls within the type of cases recognized in *Slonaker v. P. G. Publishing Co.*, 338 Pa. 292, 13 A. 2d 48 (1940), where

it is said at page 296, "Thus contracts which do not fix a definite time for the duration of the relationship which they create are sometimes construed as providing *for a reasonable time* or some particular period inferred from the nature and circumstances of the undertaking." (emphasis supplied)

In this case though no definite duration was fixed by the terms of the oral contract, the plaintiff was employed to secure customers to lease a nut vending machine and to purchase the product, viz., nuts which the appellant was to supply. The lease contracts were for a definite term with a renewal clause therein which continued the lease contract for one year after the end of the initial term of five years, and so on from year to year until either party terminated the lease by the specified notice. The plaintiff's compensation was agreed to be 10% on the initial sale to a new customer and a commission on repeat orders ranging from 6½% on three case lots of nuts and 5% on ten case lots to 2½% on larger quantities.

It seems to me that under the rule laid down in the *Slonaker* case the jury had a right to infer a reasonable period intended by the parties to govern the continuance of compensation, to be as long as the customers secured by the plaintiff continued in force the written lease and sent in repeat orders for the nuts. The compensation for which the plaintiff worked was not merely the 10% for the initial order but also the commission on repeat orders which over the period of years no doubt would, and probably did, build a worth while compensation. True, the employer might end the right of the salesman to secure new outlets for the employer's product, but to terminate his right to compensation on repeat orders so long as the leases remain in force seems to be as unjust as it is unrealistic.

I would affirm the judgment entered on the verdict.