**SENECA FALLS MACHINE COMPANY**

**v.**

**Paul C. McBETH and Paul C. McBeth, Jr., Individually, and t/a McBeth Machinery Company, Appellants.**

**No. 15665.**

United States Court of Appeals
Third Circuit.

Argued March 28, 1966.

Decided Nov. 28, 1966.

Malcolm Anderson, Pittsburgh, Pa. (Griggs, Moreland, Blair & Douglass, Pittsburgh, Pa., on the brief), for appellants.

Hubert I. Teitelbaum, Pittsburgh, Pa. (Stanley G. Makoroff, Morris, Safier & Teitelbaum, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS and GANEY, Circuit Judges, and SHERIDAN, District Judge.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

Jurisdiction in this suit is based on diversity. The defendants, the McBeths, a partnership, were sales agents for the plaintiff, Seneca Falls Machine Company, a manufacturer of machines. Seneca brought the suit to recover the purchase price of machines sold by Seneca to the McBeths for delivery to customers. The McBeths admitted the validity of Seneca's claims but set up two counterclaims, each denied by Seneca. The case was tried to the court. The trial judge found against the McBeths on the first counterclaim but for them on the second. See Seneca Falls Machine Company v. McBeth, 246 F.Supp. 271 (1965). The McBeths have appealed from the denial of the first counterclaim.

In February 1960 Seneca entered into an oral agreement by the terms of which the McBeths were made the exclusive sales agents for Seneca in western Pennsylvania. On June 2, 1960 Seneca extended the oral agreement with the McBeths whereby the latter were made the exclusive sales agents for Seneca in Maryland. The evidence shows that the oral agreement provided that Seneca should pay a 10% commission on the price of any machine sold by the McBeths within their exclusive territory including Maryland. The commission was payable 30 days after the receipt of the purchase price by Seneca.

The evidence shows that it is the settled custom in the machine tool industry that when a sale of a machine is made by one agent for delivery into the exclusive territory of another agent, even when the sale results from the exclusive effort of the agent making the sale, the commission is divided equally between the agent making the sale and the agent into whose territory the machine is delivered. The agent into whose territory the machine is delivered is required to service it.[1]

Beginning on February 28, 1961 Jones, a sales agent for Seneca, working in New Jersey, an area not within the McBeths' exclusive territory, negotiated through the New Jersey office of Mack Trucks, Inc. sales of Seneca's machines to Mack. The machines were to be delivered to Hagerstown, Maryland, which of course was within the McBeths' exclusive territory. The final sale to Mack was made by Jones on August 4, 1961. On July 12, 1961, however, Seneca, by letter terminated the McBeths' exclusive sales agreement for Maryland. All sales made by Jones, except that of August 4, 1961, were made while the oral agreement was in force. All the machinery was delivered between September 7, 1961 and November 14, 1961. The McBeths, due to the termination of their exclusive agency, rendered no services in connection with the machines. The total commission on the sales amounted to $19,680, one-half of which Seneca paid to Jones but the other half was placed in "escrow" by Seneca pending the outcome of the case at bar. Jones has died since the transactions in question and his estate has filed a claim for the balance of the commissions so held.

We conclude as did the court below that the law of Pennsylvania is applicable since that Commonwealth is the "center of gravity" and "has the most significant contacts with the matters in dispute". Auten v. Auten, 308 N.Y. 155, 160, 124 N.E.2d 99, 101–102, 60 A.L.R.2d 246 (1954), cited with approval in Griffith v. United Air Lines,

---

1. The court below found that the "[S]plit-commission custom by implication was part of the oral franchise agreement between the parties. * * *", citing Restatement, Contracts, §§ 245, 246(b), 247 (c). 246 F.Supp. 275.

Inc., 416 Pa. 1, 203 A.2d 796 (1964). Where there is no provision in a contract for its termination, ordinarily the contract is terminable at will by any party to it. See Cummings v. Kelling Nut Co., 368 Pa. 448, 451, 84 A.2d 323, 325 (1951).

Seneca's letter of July 12, 1961, terminated the McBeths' exclusive agency for eastern Pennsylvania, Maryland, Delaware, and the District of Columbia. In this letter Seneca complained of lack of sales, but it appears from the record that several employees from the McBeths' Philadelphia office had visited Seneca in May of 1961 for a sales meeting and the record shows no complaint about the McBeths' efforts to sell Seneca's machines at that time. Seneca terminated the exclusive agency for western Pennsylvania on September 27, 1961.[2,3] The McBeths allege in substance that Seneca acted in bad faith in effecting these cancellations. The trial judge stated, however, "[W]e think the reasons for the termination are irrelevant. No doubt Seneca was dissatisfied with the quantity of sales made by McBeth in western and eastern Pennsylvania, but the evidence is quite convincing that Seneca desired to retain the inchoate split commission for the servicing on the [machine] sales made by the agent, Jones, rather than let it accrue as a windfall to McBeth."[4]

Seneca contends and the court below found in substance that the McBeths did not render any service of value to Seneca in connection with the Mack machines. Seneca, therefore, asserts that equitable principles will not permit the McBeths to profit by receiving 50% of the commissions on the sales to Mack and that the principle of unjust enrichment applies to deprive the McBeths of their commissions. This is in effect asserted as a separate equitable defense to the rights contended for by the McBeths under the contract. It is undisputed that the McBeths did not render any service in connection with the Mack machines. However, the court below did not decide whether or not the McBeths had any rights which had accrued on the Mack sales when Seneca wrote the McBeths on July 12, 1961.[5] We point out also that it cannot be decided on the present record whether commissions were payable when the machines were delivered or when the sales were made.

Quite aside from the issued raised by the McBeths that Seneca terminated the oral contract in bad faith, it may be the case that the McBeths can sustain some portion of their first counterclaim by basing it on the contract itself prior to its termination. We cannot decide this issue on the present record for the court below has made no finding on this point. This question also is one which should be determined by the court below upon remand.

Seneca further contends that the consideration for 50% of the commissions was the servicing of the Mack machines which the McBeths were required to perform if the contract was not terminated. Alternatively, therefore, it would appear that Seneca is asserting a failure of consideration on the part of the McBeths which would invalidate the contract and that consequently no commissions would be due the McBeths. The court below made no finding on this point but it may be available, if valid, to Seneca on remand.

If the court below finds on remand that the McBeths were required to service the Mack machines, we point out

---

2. The defendants in their brief state that "There is no quarrel with the findings of fact embodied in the Opinion of the District Judge. The issue is the legal consequences of these facts and perhaps the weight to be given the facts." See defendants' brief, p. 2. The District Judge's findings do not exactly correspond with the record. The statement in the defendants' brief may not be an accurate one,

for in our view of the case it may make some difference as to when the respective terminations were effective. The relevant facts may be ascertained upon the remand.

3. See Transcript at 41 and 75.

4. 246 F.Supp. at 276.

5. 246 F.Supp. at 276.

that Seneca may be entitled to set off against the commissions, if any be due the McBeths, the cost of servicing the machines sold to Mack.

The McBeths contend that while a contract at will may ordinarily be terminated by any party to it at any time there is an exception to this rule, namely, that the terminating party may not act in bad faith. But, as we have indicated, the McBeths contend that Seneca terminated the contract at will simply to avoid payment of commissions on the Mack sales and that this constitutes bad faith. In support of their contention that a contract at will ordinarily can be terminated at any time except if the termination is the result of bad faith they cite Section 454 of the Restatement, Agency [6] which is quoted with approval by the Supreme Court of Pennsylvania in Helmig v. Rockwell Manufacturing Company, 380 Pa. 305, 311, 111 A.2d 118, 121 (1954).

 While this portion of the Helmig opinion does afford some vague support to the McBeths' view, neither Section 454 of the original Restatement, Agency, nor the restated Section 454, substantially aids the McBeths' position on the present record, for Section 454, old or new, provides that the recovery of the agent must be based upon a "specified result" brought about by the agent's "prior efforts". Before the McBeths can profit from the provisions of Section 454, it will be necessary to have the court below find not only what specified result, if any, and what prior efforts, if any, were required by the contract between Seneca and the McBeths, but also that the McBeths effected a "specified result" by their "prior efforts". Such findings were not made by the court below. We think that Section 454 is a cor-

rect statement of the law, but whether or not it is applicable in the instant case cannot be determined by this court in the absence of findings by the court below as indicated. If a defense under Section 454 is available to the McBeths, an issue in respect to which we presently express no view, it must be developed on remand.

The issues which we have posed cannot be answered on the present record. We will vacate so much of the judgment of the District Court, filed August 26, 1965, as directs that judgment be entered in favor of the plaintiff, Seneca Falls Machine Company and against the defendants, Paul C. McBeth and Paul C. McBeth, Jr. on their counterclaim No. 1, and remand the cause with instructions to proceed as indicated in this opinion. The parties should be permitted to supplement the record, should they desire to do so, within the sound discretion of the court below.

---

**6.** The Restatement, Agency, was restated in 1957. Section 454 as it was at the time the Supreme Court of Pennsylvania wrote its opinion in Helmig v. Rockwell Manufacturing Company, 380 Pa. 305, 111 A. 2d 118 (1954), read as follows: "An agent to whom the principal has made a revocable offer of compensation if he accomplishes a specified result is entitled

to the promised amount if the principal, in order to avoid payment of it, revokes the offer and thereafter the result is accomplished, the agent's prior efforts being the effective cause thereof." Section 454 of the new Restatement is substantially similar in tenor to Section 454 of the former Restatement.