Henry MAYERSON

v.

**WASHINGTON MANUFACTURING COMPANY** and Washington Industries, Inc.

Civ. A. No. 68–469.

United States District Court, E. D. Pennsylvania.

Aug. 9, 1972.

Feldman & Feldman by Stephen M. Feldman, Philadelphia, Pa., for plaintiff.

Lawrence T. Hoyle, of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

In this diversity contract action in two counts, defendants have moved for summary judgment dismissing both counts. In the alternative, defendant Washington Industries, Inc. ("WI") seeks summary judgment dismissing it from the suit. Plaintiff has moved to amend Count II of his complaint and for a continuance of WI's motion. Upon consideration of oral argument, memoranda of law, affidavits and answers to interrogatories, we grant Plaintiff's motion to amend but deny his motion for a continuance; we also deny defendant Washington Manufacturing Company's motion for summary judgment as to Counts I and II but grant the motion dismissing WI.

### I.

### COUNT I

Count I of plaintiff's amended complaint is predicated on the following facts which, for purposes of this part of defendant's motion, are undisputed. In 1940, plaintiff entered the employ of defendant Washington Manufacturing Company ("WMC")[1] as a salesman. In 1943, WMC informed plaintiff by letter that because of war production problems WMC was suspending the salesmen for the duration of the war but would continue to make sales to private customers by mail orders. Salesmen were to continue to receive commissions on sales to customers in their territories and would be paid one-third in cash and two-thirds in third preferred 4% stock in WMC. The plan also required that the salesmen not compete with WMC during the inactive period and indicated that they would be returned to active status upon 30 day notice from WMC. After receipt of the letter, plaintiff telephoned the author of the letter, WMC's sales manager, and was told that the two-thirds of the commissions would be paid in the form of WMC stock, par value of $1.00; that the stock would not be redeemed by WMC unless plaintiff fulfilled his obligations under the terms of his contract with WMC; and that when he completed his employment, the company would redeem the stock at par. Plaintiff then signed a copy of the letter, which made no reference to redemption, and re-

---

1. WMC's co-defendant, WI, was formed in 1966 as a holding company of various corporations, including WMC. WI is not involved in any of the operational facts of Counts I and II and is, therefore, not discussed until Part III of this memorandum.

turned it to WMC. Under this plan, plaintiff accumulated 11,726 shares of stock. In 1966, however, when plaintiff left WMC, the latter refused to redeem the shares. Plaintiff is now challenging WMC's refusal of redemption.

Defendants argue that the letter signed by plaintiff constitutes the complete contract on the stock plan and that introduction of evidence of the telephone conversation discussing redemption would violate the parol evidence rule. Therefore, according to defendant, since plaintiff has no contractual provision on which to base a claim of redemption, summary judgment is appropriate.

 The parol evidence rule (also known as the rule of partial integration) is not really a rule of evidence but is a matter of substantive law. This rule advises that the terms of a written contract cannot be altered or supplemented by a prior or contemporaneous oral agreement if the writing embraces the subject matter of the oral agreement. Crompton-Richmond Co., Inc.–Factors v. Smith, 253 F.Supp. 980 (E.D.Pa.1966); 9 J. Wigmore, Evidence § 2430, at 97 (3rd ed. 1940). The inquiry, then, is whether the writing was intended to cover the subject matter of the alleged oral agreement, and this determination is to be made by the court. The intent of the parties on this matter may be ascertained by application of either of two tests. The first is whether the particular element of the extrinsic negotiation is dealt with at all in the writing. If it is, the writing is presumed to represent all the transactions relating to that element; if not, the writing was probably not intended to include that element. T. W. Phillips Gas & Oil Co. v. Kline, 368 Pa. 516, 84 A.2d 301 (1951); Grubb v. Rockey, 366 Pa. 592, 79 A.2d 255 (1951); Crompton-Richmond Co., Inc.–Factors v. Smith, *supra* (semble). The second test is whether parties situated as were those in the present case would have naturally and normally placed the subject matter of the oral agreement, if it were made, in the writing had they intended the writing to include the oral agreement. Gianni v. R. Russell & Co., 281 Pa. 320, 323, 126 A. 791, 792 (1924). Thus, if the extrinsic oral agreement and the writing "relate to the same subject-matter and are so interrelated that both would be executed at the same time, and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing." *Id.*; 2 G. Henry, Pennsylvania Evidence § 604, at 31 (1953). Under either test, defendants cannot prevail. On the contrary, we find that the materials presented on this motion clearly show that the written agreement is not an integrated one and that the parol evidence rule does not apply to it; and we so rule, pursuant to Fed.R.Civ.P. 56(d).[2]

First it is beyond doubt that the letter signed by plaintiff which explained the lay-off and the stock-in-lieu-of-cash program does not "deal with" the question of whether or not the stock would be redeemed. In fact, the letter contains no discussion about what was to happen to the stock upon termination of employment.

Second, under the facts as presented for this motion, we find that the subject

2. Fed.R.Civ.P. 56(d) provides:

If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted.

It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

of redemption was not so interrelated with the subject matter of the letter that the parties here would "naturally and normally" have included it in the letter. A review of the letter indicates that its subject matter is not so much the establishment of a stock plan but is rather the establishment of a scheme whereby WMC could suspend its salesmen during the remainder of the war, keep them from competing with WMC, and be able to call them back into service after the war, in exchange for limited commissions to the salesmen. Redemption would seem to be a topic less related to a salesmen-retention scheme than a stock plan. In any event, the letter itself reveals that the details of the stock plan had not been worked out. The second page of the letter reads in part: "This plan is outlined for the fourth quarter, and it is our opinion that this or some similar plan will be in effect for the entire duration." The letter is also referred to as an "outline" on page one. Further, the letter does not indicate what amount of stock would be issued in relation to the amount of commissions due nor does it indicate the details of dividend payments.

Thus, the letter on its face indicates that it was not a complete, integrated agreement on the question of redemption. Accordingly, at trial plaintiff will not be barred, on the basis of the parol evidence rule, from introducing evidence of a prior oral agreement concerning redemption.

## II.

### COUNT II

■ In Count II of plaintiff's amended complaint, plaintiff alleges that WMC has breached certain provisions of plaintiff's employment contract at various times during plaintiff's tenure with WMC, the first breach occurring in 1949. In particular, plaintiff alleges that WMC reduced his territory, sent other salesmen into his territory, and

denied him certain commissions, all in contravention of the contract. Plaintiff now seeks to again amend the complaint to allege that his termination by WMC in 1966 was wrongful. We agree with defendants' allegation that plaintiff has been dilatory in waiting almost six years to raise this new claim. However, it is undisputed that the contract was executed in Pennsylvania and that Pennsylvania's law of contracts applies, including its six year statute of limitations, 12 P. S. § 31 (1953). It is also clear that plaintiff filed his motion to amend within that six year period (on December 29, 1971) and that he could have filed a separate suit for the wrongful termination claim. Accordingly, because Fed.R.Civ. P. 15(a) has been construed to permit amendments stating another cause of action, Jenn-Air Products Co., Inc. v. Penn Ventilator, Inc., 283 F.Supp. 591 (E.D. Pa.1965); because the facts of the new claim are intimately related to those of the outstanding claims; and because plaintiff is now precluded by the statute of limitations from filing a separate suit, we shall allow the amendment. To rule otherwise would be to deny plaintiff his right to file suit within the time period of the applicable statute of limitations and to penalize him for attempting to consolidate interrelated causes of action.

■ We do not, however, subject plaintiff's wrongful termination claim to defendants' summary judgment motion; at the time of oral argument of defendants' motion, plaintiff's claim was not part of the complaint, and counsel did not address their argument or briefs to the issue.

Plaintiff's contract claims in Count II are based on an alleged written contract which has not been produced by either party but the purported terms of which plaintiff has recited from memory. Of the various terms, only one is pertinent to the disposition of defendants' Count II motion, and it relates to the duration of the contract: "The contract was to

remain in force continuously as long as plaintiff covered the territory and the territory produced business at least commensurate with the amount it was producing when plaintiff joined the company."

Defendants argue that the contract, as recited by plaintiff, amounts to nothing more than a contract at will which is modifiable and terminable at will; moreover, even if the contract initially was one for a specific duration or a reasonable time, the contract was transformed into one at will by the conduct of the parties. In short, defendants' position is that there was no contract capable of being breached. Defendants further contend that in any event, plaintiff is barred by laches from seeking relief for the breaches.

■ Generally, a service contract is presumed to be one at will unless the agreement specifies a specific time or prescribes conditions which shall determine the duration or unless the plaintiff can show that the parties intended the agreement to last for a reasonable time. Jackman v. Military Publications, Inc., 234 F.Supp. 217 (E.D.Pa.1964), aff'd, 350 F.2d 383 (3rd Cir. 1965); Lubrecht v. Laurel Stripping Co., 387 Pa. 393, 127 A.2d 687 (1956).

There is little doubt that the contract as stated by the plaintiff does not establish a definite period of time for its duration nor prescribe conditions which would allow determination of its duration. The "continuous as long as . . . ." provision of the contract, quoted in full above, is fraught with ambiguities and is of the kind which has been found defective. See Red Wing Shoe Co. v. Shepherd Safety Shoe Corporation, 164 F.2d 415 (7th Cir. 1947) ("So long as sales made on account . . . 'amount to a yearly average of $35,-000.' "); Lightcap v. Keaggy, 128 Pa. Super. 348, 194 A. 347 (1937) (". . . as long as you live.") For example, the phrase "as long as . . . the territory produced business at least commensurate with the amount it was producing" does not tell us whether plaintiff had to achieve (1) gross sales equal to that achieved annually in previous years; or (2) continued gross sales sufficient to retain a proportionate amount of the total market in the sales area; or (3) yearly increases in sales at a rate produced by that area before; or (4) sales which kept pace with general economic growth in the area.

■ The contract, then, must be deemed one of indefinite duration and, therefore, presumed to be one at will unless plaintiff here can show that the parties intended to enter into a contract for a "reasonable period". The court in *Lubrecht, supra,* noted that intent can be ascertained by examining the

. . .

". . . circumstances surrounding the execution of the contract, the situation of the parties, the objects they apparently had in view, and the nature of the subject matter of the agreement from which the jury could infer that the contractual relationship contemplated by the agreement was to endure for a reasonable time or for some particular period." 127 A.2d at 690.

■ Defendants argue that under this rule the scope of inquiry may not include events occurring after the execution of the contract. We do not agree. In our opinion, the course of conduct of the parties is also pertinent in elucidating their intent. Fenestra, Inc. v. John McShain, 433 Pa. 137, 248 A.2d 835 (1969); 3A Corbin, Contracts § 684, at 231 (1960).

■ Three events are alleged by plaintiff which we believe create a genuine factual question as to whether the parties intended the contract to be for a reasonable period. First, plaintiff states that while negotiating for the contract in 1940 he informed WMC that he wanted a "long-term agreement." Second, when WMC purportedly commit-

ted its first breach against plaintiff by withdrawing in 1949, certain counties from the sales territory he was promised originally in 1940, he was asked to sign an agreement releasing the counties. We agree with plaintiff that WMC's request is evidence of an understanding by WMC that the contract was not terminable at will.

Third, plaintiff alleges that on his own initiative he began to guarantee to WMC the credit of new accounts to whom WMC would not otherwise ship goods because of incomplete credit information. On many occasions, WMC would insist that plaintiff forward his check to WMC for the full amount of the sale; for such checks, plaintiff would maintain sufficient covering funds in his account. At one time, according to plaintiff, WMC held one of plaintiff's checks in the amount of $7,000.00 for eleven months. When two guaranteed customers defaulted, plaintiff was asked to reimburse WMC for the loss and did so. Plaintiff argues that his making the guarantees constituted the giving of substantial consideration to WMC beyond merely the rendering of the services agreed upon and reveals an understanding by the parties, through WMC's acceptance of the guarantees, that the contract was not terminable at will. For purposes of this motion, we find plaintiff's position meritorious. See Cummings v. Kelling Nut Co., 368 Pa. 448, 84 A.2d 323 (1951); Lucacher v. Kerson, 158 Pa.Super. 437, 45 A.2d 245 (1946).

Furthermore, WMC's acceptance of plaintiff's guarantee policy could be deemed to estop defendants from now asserting that the contract was terminable at will. This possible conclusion is suggested under a rule of service contract interpretation best articulated by Corbin:

"Interpreting the elliptical expressions of the parties, the court may find that the expressions, interpreted in the light of the surrounding facts, made the understanding of one of the parties reasonable and made it unreasonable for the other party not to know that such would be the first party's understanding. The second party, having negligently or intentionally misled the first, is bound by estoppel." 3A Corbin, Contracts § 684, at 224 (1960).

See American Type Founders, Inc. v. Lanston Monotype Machine Co., 45 F. Supp. 531 (E.D.Pa.1942), aff'd, 137 F.2d 728 (3rd Cir. 1943). Plaintiff alleges that he would never have made the guarantees if WMC could have terminated the contract at whim, and, under the circumstances of this case, certainly a genuine issue of fact must be said to exist as to whether WMC knew or reasonably should have known of plaintiff's understanding.

Defendants next argue that even if the contract originally was one for a reasonable duration, it was mutually abandoned and the employment relation became one at will because WMC unilaterally modified every term of the contract with plaintiff's knowledge. Defendants' contention of abandonment must fail since plaintiff argues that many of the purported "modifications" were ineffective because, inter alia, they were accepted by him under duress. Specifically, plaintiff states that when he objected to WMC's cutting back of his territory in 1949 and 1955, he was told that if he did not acquiesce in the cut-back he would be fired and "blackballed in the industry as a trouble maker." Plaintiff further avers in his affidavit that this threat was always in his mind. We agree with plaintiff that WMC's alleged threat of blacklisting is a form of coercion for which there would be no adequate legal remedy and thus would amount to duress as a matter of law, if plaintiff could prove the facts of the threat at trial. See Polish v. Johnson's Service Co., 218 F.Supp. 387 (E. D.Pa.1963), rev'd on other grounds, 333 F.2d 545 (3rd Cir. 1964); Restatement,

Contracts § 493 (1932). Such duress, in our opinion, would vitiate any consent by plaintiff to at least two of the supposed "modifications" and perhaps to others. The transferral effect of the explicit threats to "modifications" made without such threats is unclear and would be a factual issue determinable at trial.

■■■ Defendants finally attack Count II on the ground that plaintiff is barred by laches from now raising his claims. This contention may be dismissed without a review of its factual basis since the defense of laches is clearly inapplicable in a diversity suit in federal court based on a state claim at law, as opposed to equity, which plaintiff's claim undeniably is. See Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Williamson v. Columbia Gas & Electric Corp., 110 F.2d 15 (3rd Cir. 1939); 2 Moore's Fed.Proc. ¶ 2.06, at 358 (1970).

To summarize, then, we find that as to Count II, plaintiff has alleged facts which, if proven at trial, would constitute sufficient evidence to permit a jury to find that the employment contract was one for a reasonable duration rather than one at will and thus was a contract capable of being breached. Defendants' defense of laches is without merit.

### III.

### WASHINGTON INDUSTRIES' MOTION FOR SUMMARY JUDGMENT

■■■ The alternative claim for summary judgment seeks dismissal of WI on the ground that WI is not responsible for the alleged conduct attributed to WMC. Prior to oral argument, plaintiff moved for a continuance of this aspect of defendant's motion; plaintiff's only reason stated for the desired delay was that the relationship between WI and WMC is "exceedingly complicated" and that more discovery was needed. We deny plaintiff's motion for continuance for two reasons. First, we agree with WI that plaintiff has had ample opportunity to conduct the requested discovery and that any additional discovery would unfairly prolong WI's involvement in this litigation. Plaintiff's dilatoriness is illustrated by the fact that although suit was filed in March, 1968, on the erroneous assumption that WI was wholly owned by WMC, plaintiff did nothing by way of discovery for three years to explore this aspect of the case, even though he was clearly proceeding on conjecture. It would be unfair at this stage to allow plaintiff to seek discovery as a "backdoor defense to a test of the merits of his claim." Chung Wing Ping v. Kennedy, 111 U.S.App.D. C. 106, 294 F.2d 735, 737 (1961). Second, plaintiff has failed to submit an affidavit to create or support any genuine or convincing reason for delay, as required by Fed.R.Civ.P. 56(f). In any event, the merits of WI's motion were adequately argued by plaintiff's counsel at oral argument, and we feel no reluctance to rule on them.

■■■ Plaintiff's claim against WI appears without substance, and we grant WI's motion for summary judgment as to it. At the outset, it should be noted that plaintiff's contact with WI has been extremely tenuous, at best. WI, a stock-holding company for WMC and other subsidiaries, was not formed until three months before plaintiff left WMC in 1966; throughout the following year, when WMC was paying plaintiff $200. per month not to compete with WMC, WI remained inactive. Moreover, at all times relevant to this suit, plaintiff's dealings and alleged contract were with WMC, not WI. From plaintiff's answers to interrogatories and counsel's statement at oral argument, it appears that plaintiff's basis for keeping WI in the suit is his belief that WI is not an entity separate from WMC and its other subsidiaries and is, therefore, responsi-

ble for the debts of and control over its subsidiaries. In other words, plaintiff wishes to "pierce the corporate veil" of WMC. We need not examine WI's relationship with WMC and its other subsidiaries to determine whether or not such subsidiaries were "mere instrumentalities" of WI; in our opinion, plaintiff's claim as to WI must fail because he has neither alleged nor presented evidence which shows that WI perpetrated a fraud or wrong through WMC and that plaintiff would suffer an unjust loss if WI were not held responsible for the alleged wrongs of WMC. On a motion for summary judgment such allegations, as well as some evidence, are a necessary although not sufficient condition for ignoring corporate separateness. *See* Zubik v. Zubik, 384 F.2d 267 (3rd Cir. 1967); American Trading & Production Corp. v. Fischbach & Moore, Inc., 311 F.Supp. 412 (N.D.Ill.E.D.1970). In *American Trading, supra,* the court said:

"Moreover, even if it could be said that the Subsidiary were the mere instrumentality of the Parent, that circumstance by itself would not justify imposition of liability. For it has long been the law that the corporate entity is only ignored when the ends. of justice require it * * * Some element of unfairness, something akin to fraud or deception, or the existence of a compelling public interest must be present in order to disregard the corporate fiction." 311 F.Supp. at 416.

There is no indication in this case that plaintiff was ever misled or deceived in any way by the activities of WI or that WMC is an undercapitalized "sham" or "dummy" corporation having been stripped of its assets by WI. Plaintiff certainly will suffer no injustice by our granting WI's motion.

Accordingly, we enter the following order.

## ORDER

And now, this 9th day of August 1972, it is ordered that

(1) Plaintiff's motion to amend Count II of his amended complaint is GRANTED;

(2) Plaintiff's motion for a continuance of disposition of defendant Washington Industries, Inc.'s motion for summary judgment dismissing it is DENIED;

(3) Washington Industries, Inc.'s motion for summary judgment dismissing it is GRANTED;

(4) Defendant Washington Manufacturing Company's motions for summary judgment as to Counts I and II are DENIED; and

(5) The following Finding of Fact-Conclusion of Law as to Count I shall be controlling at trial:

Washington Manufacturing Company's letter of September 9, 1943, setting forth a stock commission plan under which plaintiff claims to have earned a right to redemption of a certain number of accrued shares, does not constitute a complete or integrated agreement on the issue of redemption, and evidence of a prior, or contemporaneous agreement concerning redemption will not be inadmissible at trial on the basis of the parol evidence rule.