**Solomon GREEN et al.**

v.

**MEDFORD KNITWEAR MILLS, INC. and Warnaco, Inc. a/k/a Warner Brothers Co.**

Civ. A. No. 74–3176.

United States District Court, E. D. Pennsylvania.

Feb. 24, 1976.

N. Carl Schwartz, Merion, Pa., for plaintiffs.

C. Gary Wynkoop, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

Plaintiff, Solomon Green, ("Green") seeks to recover substantial compensatory and punitive damages for breach of an alleged oral contract of permanent or lifetime employment. His wife and child, also named plaintiffs, seek to recover additional damages for breach of the same alleged contract. The plaintiffs further claim that the defendants, Medford Knitwear Mills, Inc. and Warnaco, Inc. (both defendants hereinafter called "the Company") fraudulently and deceitfully entered into the contract never intending to perform their obligations. The action is now before us on the Company's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

 Green argues that the motion for summary judgment is premature because he has not completed discovery. The completion of discovery is not relevant in connection with a motion for summary judgment. When faced with a summary judgment motion, the non-movant "cannot withhold his evidence until the date of trial . . . plaintiff cannot rest on an ignorance of the facts . . . ." *Berry Bros. Buick, Inc. v. General Motors Corp.*, 257 F.Supp. 542, 545 (E.D.Pa.1966). Rule 56(b) provides that a party against whom a claim is asserted may "at any time" move for summary judgment. Rule 56(c) provides that the non-movant may serve opposing affidavits and that judgment may be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The Company has agreed, for the purposes of this motion, to accept as true all the facts which have emerged by way of Green's deposition and his answers to interrogatories. Green has not filed any affidavits setting forth additional facts. The Court has, therefore, accepted as true all of Green's factual allegations set forth in his deposition and answers to interrogatories and considered them in a light most favorable to him. This Court concludes that there is no genuine issue as to any material fact and that the Company is entitled to judgment as a matter of law.

Green's deposition and answers to interrogatories set forth the following relevant facts upon which the Court has based its determination that the Company is entitled to summary judgment. Approximately eight months after an initial interview with representatives of the Company, which occurred in May of 1971, Green was asked to return to meet with Mr. Felcoff, a vice president of the Company, and Mr. Rennett, the manager of one of its manufacturing plants. At that meeting, he was offered a position as the cutting supervisor of the firm's plant in Lebanon, Pennsylvania. Green told the Company's representatives that he "wanted a permanent job for the rest of his days" (N.T. 69) and that he ". . . didn't want to go from town to town. [He] wanted this to be [his] permanent job." (N.T. 70). Mr. Felcoff, a vice president, responded that "there's no reason why you're not the man for us." (N.T. 71). Green states in his answers to the Company's interrogatories that his position was to be a permanent one that would continue for life. In his deposition he also states that he was being hired "indefinitely." (N.T. 60).[1] After

---

1. Although in his complaint Green alleges that the Company agreed to employ him "permanently for a period of twenty-two years," Green did not so state in his deposition or answers to interrogatories.

some discussion concerning salary at the meeting with Mr. Felcoff and Mr. Rennett, the Company agreed to pay Green $250.00 per week, enroll him in various benefit plans maintained by the Company, and. pay his living and moving expenses during the period of his move from Allentown, Pennsylvania to Lebanon, Pennsylvania, prior to his reporting for work. Green commenced working for the Company in January of 1972 and was discharged by the Company approximately two years later.

Green stated in his deposition that the parties did not discuss: (a) the amount or the basis for salary increases; (b) whether Green would be paid if he were unable to work or if there were no work available; (c) whether Green could seek other or additional employment; and (d) whether Green would be obliged to move if the Company relocated its cutting room.

■ The law in Pennsylvania which governs the case at bar was stated in *Cummings v. Kelling Nut Co.*, 368 Pa. 448, 451, 84 A.2d 323, 325 (1951) and quoted by our Third Circuit Court of Appeals in *Jackman v. Military Publications, Inc.*, 350 F.2d 383, 385 (3d Cir. 1965) as follows:

> The general rule is that when a contract provides that one party shall render services to another . . . but does not specify a definite time or prescribe conditions which shall determine the duration of the relation, the contract may be terminated by either party at will . . . . *The burden is on the plaintiff in such cases to overcome the presumption by showing facts and circumstances establishing some tenure of employment* . . . . The intention of the parties governs. One relying on the contract as providing for a reasonable length of time must establish something in the nature and circumstances of the undertaking which could create the inference that a definite or reasonable period of employment was actually contemplated by the parties. (Emphasis added).

Accordingly, under Pennsylvania law, in the absence of a specific term or duration, a presumption is raised that the employment is at will and can be terminated by either party at any time. See *Mayerson v. Washington Manufacturing Company*, 58 F.R.D. 377 (E.D.Pa.1972); *Weir v. Hudson Coal Co.*, 99 F.Supp. 423 (M.D.Pa.1951); *Gillian v. Consolidated Foods Corp.*, 424 Pa. 407, 227 A.2d 858 (1967); *Lubrecht v. Laurel Stripping Co.*, 387 Pa. 393, 127 A.2d 687 (1956); *Slonaker v. P. G. Publishing Co.*, 338 Pa. 292, 13 A.2d 48 (1940); 4 *Williston Contracts* § 1027A(3) (rev. Ed. 1938).

The contract as stated by Green does not establish a definite period of time for its duration. In response to the Company's interrogatory asking for the exact terms of the contract of employment, Green replied:

> Solomon Green and Harriet Green agreed that Solomon Green would terminate his employment, move themselves and their son to Lebanon, Pa. and take all necessary steps; that Solomon Green would work for Defendants permanently for the balance of his normal working life and in consideration thereof, Defendants agreed they would employ Solomon Green permanently for the rest of his normal working life at a salary of two hundred and fifty dollars per week with periodic and inflation raises and participation in their other employee benefit plans.

In his deposition, Green testified:

> . . . they weren't hiring me just for a year or so, he was hiring me indefinitely for work because I'd be working—exactly what he said, so that the salary'd be two fifty or two seventy-five, it was immaterial because he expected me to stay with him for many many years . . . .. And he said to me, showed me that the plan— the money at the beginning wasn't that important, that if I was looking for something suitable for—you know, indefinitely, for a long time, so—(N.T. 60–61). (Emphasis added).

When asked about the discussion concerning salary, Green testified in his deposition:

Well, about I wanted three hundred and he said—and I said I wouldn't work for less than two seventy-five. Then he says "Well, I can go for two fifty;" and then he came in to show me where the two fifty at the moment wasn't important because I had just got done telling him that I wanted to stay here for the rest of my days and, well, then he, you know, the long terms themselves, you have the profit sharing—in fact, I recall he told Al to explain to me the different things they have in the profit sharing, how well it is, how good it is. Blue Cross, Blue Shield, all of this is taken care of. In fact, I remember Al threw in that this is the type of company that anyone would want to come to work for, that the president and vice-president talk with first names and—in other words, he was trying to show me that the immediate money wasn't that big of an item because in the long-term thing, which was what I was looking for and what he was looking for out of me. And he said he went along with what I—I didn't *want to go from one town to another town. I wanted this to be my permanent job.* (N.T. 69–70) (Emphasis added).

■■ On the basis of Green's deposition and his answer to interrogatories, the Court finds that Green's employment contract with the Company did not specify a definite time or prescribe conditions to determine the duration of the employment. Under the law of Pennsylvania, which is the law the parties have agreed applicable, such a contract of employment may be terminated by either party at will. The Pennsylvania law also provides that the burden is on the plaintiff in such cases to overcome the presumption that the contract can be terminated at the will of either party by showing facts and circumstances establishing the fact that it was the intention of the parties that the contract last for some definite period of time. *Cummings, supra,*

368 Pa. at 451, 84 A.2d at 325. The Court in *Lubrecht, supra,* noted that the intent can be ascertained by examining the

. . . circumstances surrounding the execution of the contract, the situation of the parties, the objects they apparently had in view and the nature of the subject matter of the agreement from which the jury could infer that the contractual relationship contemplated by the agreement was to endure for a reasonable time or for some particular period. (Citations omitted). 387 Pa. at 397, 127 A.2d at 690.

Even accepting Green's version of the facts as true, we are convinced that there is insufficient evidence from which a jury could find that Green had overcome the presumption that the contract was terminable at will. Green asserts that he was employed "permanently, for the rest of his days." However, the Pennsylvania courts have taken the position that the use of the word "permanent" contemplates a relationship of employment for so long as both employee and employer are satisfied. For instance, in the case of *Lightcap v. Keaggy,* 128 Pa.Super. 348, 194 A. 347 (1937), plaintiff testified that he moved from Pittsburgh, Pennsylvania to Greensburg, Pennsylvania to assume management of defendant's properties in reliance upon defendant's promise to pay him $100 a month for life and provide him with a suitable home. In reversing a judgment entered for plaintiff, the Court stated:

Did the plaintiff assume, and was he warranted in assuming from this language that he was being offered and that he was accepting a job which would last as long as he lived? How many hours a day and how many days a week was he to work? Was he to be paid if he became ill? Was he to be paid if he became disabled and could no longer perform the services required of him? Was he to be paid if Dr. Keaggy sold his real estate? Could he engage in other work? Suppose Dr. Keaggy had died a year after

the contract was entered into and the property passed to his heirs. Were the heirs bound to retain Mr. Lightcap? What was the consideration? Did Mr. Lightcap bind himself to remain in the defendant's employ all his life? What were his duties as manager and supervisor of farms and property? These and many other questions arise immediately when we consider whether the testimony is sufficient to show the existence ·of a definite contract of employment which was to endure for the life of one of the parties.

Quoting from Labatt on Master and Servant, par. 175: "*As a general rule the word 'permanent', as applied to an employment, will be regarded as meaning nothing more than that the employee is to hold the position until one or the other of the contracting parties shall desire to terminate the connection;* in which event the dissatisfied party is to have the right to be relieved of further obligations to the other, upon fair and equitable terms and after reasonable notice. Such a term is not to be understood in the sense that the parties are to be bound together by ties which can be dissolved only by mutual consent or for sufficient reasons." To same effect, A. & E. Encyclopaedia of Law, vol. 20, p. 16. (Emphasis added). Id. at 357–58, 194 A. at 350–51.

In *Seiss v. McClintic-Marshall Corp.,* 324 Pa. 201, 203, 188 A. 109, 109 (1936), the jury found a verdict in favor of the plaintiff on an agreement to ". . . take care of me for life in employment that I would be able to do." The lower court entered a judgment notwithstanding the verdict for the defendant which the Pennsylvania Supreme Court upheld, concluding that the contract was too imprecise and indefinite to be enforced. In analyzing the terms of this contract, the Court held that its vagueness precluded the jury from being able to ascertain the intention of the parties with any reason-

able degree of certainty. The Court said:

. . . no rate of pay is specified; no arbiter is provided to determine what work plaintiff will be able to perform from time to time; no provision is made as to whether he shall be paid when the plant is operating and he is unable to work, or when he is able to work but the plant is closed down. Is he to be paid if there is no position which he can fill . . . . who shall determine what work is "suitable," or when plaintiff is no longer capable of doing any suitable work. The supposed undertaking was to furnish employment for life, and yet it was left to conjecture whether such undertaking would terminate when plaintiff became incapacitated by reason of old age, or was to continue until his death. 324 Pa. at 203, 188 A. at 110.

Green does not allege that the contractual relationship contemplated by the parties was to endure for a "reasonable" time.[2] Rather, he specifically alleges that it was to be permanent, lifetime employment. In *Seiss, supra,* the Court examined a contract of life employment and said: "Alleged contracts of life employment are, however, so unusual as to have been, with rare exceptions, condemned by the courts as unreasonable and unauthorized.[3] 324 Pa. at 203–04, 188 A. at 109.

■ There was never any discussion between Green and the Company as to whether Green would be paid if he were not able to perform the work or if there were no work available. The discussions were likewise silent on the question of whether or not Green was precluded from seeking alternate or additional employment or the obligations, if any, if the Company's business was acquired by third parties, ceased to operate or, as actually occurred, was transferred to a new location. Although Green claims

---

2. The record shows that Green was employed by the Company from January 1972 to the end of December 1973.

3. Quoting *Heaman v. E. N. Rowell Co.,* 261 N.Y. 229, 231, 185 N.E. 83, 84 (1933).

582

that he had permanent lifetime employment, his only testimony as to the duration of the contract is that he told the Company he wanted "a permanent job for the rest of his days," (N.T. 64); that he ". . . didn't want to go from town to town" (N.T. 70); that he was being hired "indefinitely" (N.T. 60); that he would work for the Company "permanently for the balance of his normal working life" (answers to interrogatories); that the Company was hiring him "indefinitely, for a long time" (N.T. 60–61); and that he was to receive a salary of $250 per week with periodic and inflation raises and participation in employee-benefit plans. Under Pennsylvania law the vagueness, impreciseness and indefiniteness of such testimony is not sufficient to enable a jury to find that Green has met his burden and overcome the presumption.

In addition to the breach of contract allegation, in paragraph 7 of the complaint Green further claims that:

Defendants, unknown to plaintiffs at the time of entering into said contract and thereafter, fraudulently and deceitfully, did not intend to perform their obligation under said contract.

In the interrogatories Green was asked to:

16. Set forth each fact known to plaintiff that supports the allegations contained in paragraph 7 of the complaint.

He answered:

16. a) Premature termination of employment
b) Defendants' denial of the terms of the contract.

There is nothing in Green's deposition or in his answers to interrogatories which in any way supports his allegations of fraud. As the United States Supreme Court stated in *First National Bank v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, 592 (1968), a party "cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him."

We, therefore, grant summary judgment in favor of the Company and against Green.