## Kosak v. Triangle Publications, Inc.

*Sheldon Tabb* and *Edward Davis*, for plaintiffs.

*Dilworth, Paxson, Kalish, Kohn & Dilks*, for defendant.

MILNER, J., November 25, 1958.—This matter came on for hearing on October 1, 1958, at which time plaintiffs presented their evidence with respect to defendant's liability and rested their case on the merits pending disposition of defendant's motion to dismiss the complaint. The court took under advisement defendant's motion to dismiss the complaint, with the un-

derstanding that if the motion should be refused, plaintiffs would be given the opportunity to present further evidence respecting damages and defendant would be given the opportunity to present its evidence in defense to the action. The motion to dismiss the complaint is thus equivalent to a motion for a nonsuit under equity rule 1512 of the Pennsylvania Rules of Civil Procedure, which, under rule 224, may be made at the conclusion of plaintiffs' case on liability. After a careful study of the pleadings and the evidence, aided by the briefs and requests for findings and conclusions which the respective counsel have filed, I am constrained to grant the motion for a nonsuit. The following is a brief statement of the considerations which move me to this conclusion.

Plaintiffs' complaint in equity is based on the breach of an alleged oral contract for an exclusive agency for the sale of newspapers in a territory in and around Bristol Borough, in Bucks County. Defendant is the publisher of the daily and Sunday Inquirer. Plaintiffs purchased from one Freedman the news agency business which Freedman operated, which included, among other publications, the sale of the Inquirer to customers in the Bristol area. Freedman had been operating under a so-called franchise from defendant for the distribution of the Inquirer in his territory. The sale of the business to plaintiffs was subject to defendant's approval of the transfer of the franchise from Freedman to plaintiffs. The agreement of sale, which was in writing, did not define the precise limits of the territory involved, but Freedman, before the agreement was consummated, conducted plaintiffs on a tour of the territory, and subsequently delivered to plaintiffs a list of his customers and a map of the area with the territory outlined thereon. This list and map were not produced at the hearing; Kosak, one of the plaintiffs, testified that they had been lost or destroyed.

The agreement between Freedman and plaintiffs was signed on February 27, 1953. Earlier in the same day, plaintiffs and Freedman visited defendant's office in Philadelphia and had a conversation with Mr. Fishman, defendant's country circulation manager. It is on this conversation that plaintiffs base their present action. The purpose of the visit was, of course, to obtain defendant's approval of the transfer of Freedman's franchise to plaintiffs. The pertinent facts of the conversation, as testified to by Kosak, are that Fishman, after he was informed of the proposed agreement, said: "Fellows, know your boundaries, you will be O. K. . . . Keep your nose clean, do a good job, and there will be no trouble with the Inquirer whatsoever." Fishman stated to the plaintiffs: "Levittown is not yours to serve." Kosak then asked Fishman: "We cannot serve Levittown, but what happens if, as and when Levittown crosses Haines Road? It is our territory then?", to which Fishman replied: "That is your territory."

Haines Road formed part of the northeastern boundary of the territory served by Freedman and ceded by him to plaintiffs. The development known as Levittown has now spread to the point that a considerable number of homes have been built to the southwest of Haines Road, in territory which plaintiffs regard as theirs. Defendant, on the other hand, maintains that plaintiffs' privilege of distribution of the Inquirer does not extend to any part of the Levittown development, regardless of whether it is northeast of or southwest of Haines Road. The complaint asks for an injunction restraining defendant from distributing the Inquirer in the territory which plaintiffs claim other than through plaintiffs, and for damages for breach of contract.

Two questions arise at once which would have to be answered favorably to plaintiffs before they would be

entitled to the relief sought: (1) Was the conversation with Fishman sufficiently definite to create a contract between plaintiffs and defendant for the exclusive right to distribute defendant's newspaper within a precisely defined territory; and (2) had Fishman, as country circulation manager, the actual or apparent authority to bind defendant to such a contract?

In my view of the case, we do not need to reach either of these questions, for, even if we concede the existence of a contractual obligation on the part of defendant, the pleadings and plaintiffs' evidence make it abundantly clear that the utmost that can be spelled out from the circumstances is a contract indefinite in duration, and therefore terminable at will by either party. This was the holding in Slonaker v. P. G. Publishing Company, 338 Pa. 292 (1940), wherein the factual background was strikingly similar to that of the case before us. Plaintiffs have endeavored to distinguish this case by pointing to the language of Mr. Justice Stern in the Slonaker case, at page 296, wherein he referred to a number of cases holding that some contracts indefinite in duration should, by the circumstances of their formation, be construed as providing for their continuance for a reasonable time. However, we cannot in this case, any more than the court could in the Slonaker case, find any basis to hold that defendant manifested an intention to contract with plaintiffs for exclusive rights in any precise territory permanently or for any implied period of time.

Nor could plaintiffs have understood that their relation with defendant, whatever its nature may have been otherwise, was not terminable at any time at defendant's will. This was clearly the understanding existing between defendant and Freedman, plaintiffs' predecessor; and in the contract of sale between Freedman and plaintiffs, it was expressly agreed that if the

present defendant should at any time within two years discontinue the so-called franchise for distribution of the Inquirer in the territory being transferred, the purchase price from plaintiffs to Freedman would be reduced pro tanto.

Plaintiffs have argued that they are entitled to the relief sought on the theory of promissory estoppel; that is to say, that defendant having made a promise which it should reasonably expect to induce action of a definite and substantial character on the part of plaintiffs and which did induce such action, it is bound by that promise if injustice can be avoided only by its enforcement. This is the language of A.L.I. Restatement of the Law of Contracts §90, and it is the law of Pennsylvania: Fried v. Fisher, 328 Pa. 497 (1938).

The doctrine of promissory estoppel has as its essential core the concept that the promisor, having led the promisee to action or forbearance in reliance on the promise, is estopped to assert the absence of consideration for the promise and is bound on equitable principles to its fulfillment. But even in cases of promissory estoppel, the promisor's obligation rises no higher than the terms of the promise that he has made. As was pointed out above, defendant in this case, if it entered into any contract at all, was at liberty at any time to terminate the contract at will, either for all or any part of the territory, and this plaintiffs recognized by the terms of their contract with their vendor. They cannot now be heard to say that they were led by defendant to rely on a promise which defendant did not, in fact, make, namely, that they were to have exclusive rights in Freedman's or any other territory in perpetuity or for any stated period of time.

For the foregoing reasons a nonsuit is entered and plaintiffs' complaint in equity is dismissed.