KING OF PRUSSIA EQUIPMENT CORP., Plaintiff,

v.

POWER CURBERS, INC., Defendant.

No. 98–4754.

United States District Court, E.D. Pennsylvania.

May 7, 2001.

William Krekstein, Davis and Bucco, P.C., Spring House, PA, for Plaintiff.

Wayne A. Mack, Jr., James H. Steigerwald, Manly Parks, Duane, Morris & Heckscher, Philadelphia, PA, for Defendant.

## MEMORANDUM

POLLAK, District Judge.

This case is a diversity action involving plaintiff King of Prussia Equipment Corporation ("KPEC"), a Pennsylvania corporation, and defendant Power Curbers International ("PCI"), a North Carolina corporation. Before the court now is the defendant's consolidated motion for summary judgment.[1]

*Facts*

Plaintiff King of Prussia Equipment Corporation ("KPEC") leases and sells heavy equipment to the construction industry. Defendant Power Curbers, Inc. ("PCI") is an industry leader in the formless concrete business. KPEC had an oral distributorship agreement with PCI for 17 years. KPEC sold PCI's formless equipment to the exclusion of other manufacturers, with a few exceptions. Beginning in 1980, KPEC advertised, sold and serviced PCI products in Pennsylvania, New Jersey and northern Delaware. Employees of KPEC attended PCI service and sales schools periodically throughout the course of the distributorship time period. In addition, KPEC kept a supply of PCI parts on hand for its customer base.

PCI started distributing parts directly to its customers in Maryland in the summer of 1997. Based on that success, PCI claims it began considering dropping more of its other distributorships in order to sell directly to the construction industry. In August of 1997, PCI sent a letter to KPEC disclosing that PCI was debating whether to "go direct" in KPEC's territory. PCI also sent a written contract for KPEC to sign, with a clause that stated the contract could be terminated with 30 days notice by either side. KPEC refused to sign it.

By November of 1997, the decision to terminate the oral distributorship agreement had been made. PCI sent a letter to KPEC dated December 2, 1997 informing the company that its relationship would be terminated in thirty days. A second letter dated December 15, 1997 stated the termination also applied to the New Jersey and Delaware territories. PCI offered a 5% "finder's fee" for any sales made in KPEC's former territory within three months of the distributorship termination date. Shortly after the termination, KPEC became a distributor of a new line of construction industry products manufactured by Miller Formless, but KPEC claims sales have not been strong. KPEC alleges the reason for the slow sales is that PCI dominates the market, due in large part to KPEC's 17–year history of local promotion. The machines are expensive and last a long time, KPEC claims, so area companies are reluctant to change brands. KPEC further claims that service profits

---

1. This consolidated motion combines the remaining arguments from two prior summary judgment motions that were dismissed as moot.

have been lost since companies insist on the same brand of parts for their PCI equipment.

### Procedural History

KPEC commenced suit against PCI on September 4, 1998. PCI filed its answer to the complaint on October 4, 1998. On August 17, 1999, KPEC moved for leave to file an amended complaint. PCI filed a motion for summary judgment addressed to the initial complaint on August 30, 1999. KPEC's motion to amend the complaint was granted on September 24, 1999. PCI answered the amended complaint on October 12, 1999. On November 5, 1999, PCI filed a motion for summary judgment addressed to the amended complaint. On March 15, 2000, PCI's motion for summary judgment on the original complaint was dismissed as moot, since KPEC had filed an amended complaint. On March 17, 2000, PCI filed a motion to restate its first motion for summary judgment. That motion to restate was denied on December 12, 2000 in an order which also dismissed as moot PCI's second motion for summary judgment and directed PCI to submit a new summary judgment motion encompassing all issues. PCI then filed a consolidated motion for summary judgment on January 5, 2001. KPEC's response was filed January 22, 2001. PCI filed a reply on February 6, 2001.

### Summary Judgment Standard

To survive PCI's motion for summary judgment, KPEC needs to establish the existence of a genuine issue of material fact. Fed.R.Civ.P. 56. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637 (3d.Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (citations omitted). The nonmoving party is entitled to have its allegations taken as true, to receive the benefit of doubt when its assertions conflict with those of the movant, and to have inferences from the underlying facts drawn in its favor. *In re Unisys Savings Plan Litig.,* 74 F.3d 420, 433 n. 10 (3d Cir.1996). The party opposing the summary judgment motion must come forward with sufficient facts to show that there is a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Discussion

Plaintiff sets forth three claims against defendant: breach of contract, breach of the implied covenant of good faith and fair dealing, and quantum meruit.

#### A. Breach of Contract

Neither party questions that an oral contract existed. Where the parties differ is whether the contract had a definite term of duration. PCI argues that the oral contract it had with KPEC was without any definitive means to end it and therefore could be terminated at will. KPEC claims that the oral contract had set conditions and therefore *did* have a term of duration—as long as those conditions were met, the contract continued.

PCI contends that if it can prove the oral contract with KPEC did not have a term of duration, the contract could then be terminated by either party at will. PCI cites *Slonaker v. P.G. Publishing Co.,* 338 Pa. 292, 13 A.2d 48 (1940) and *Weilersbacher v. Pittsburgh Brewing Co.,* 421 Pa. 118, 218 A.2d 806 (1966) as support for this contention.

In *Slonaker,* the plaintiff bought a news agency that featured an exclusive distributorship of the most important paper in the area, the *Pittsburgh Post Gazette,* claiming to rely on the advice of a *Post Gazette*

manager. *Slonaker*, 13 A.2d at 49. When the plaintiff tried to sell the news agency along with its distributorship six years later, the manager stopped shipping papers to him for distribution. *Id.* at 50. Plaintiff sued, claiming he had an oral contract with the *Post Gazette* that was to last for at least his lifetime if he so desired. *Id.* The court disagreed, stating that "contracts which do not fix a definite time for the duration of the relationship which they create are sometimes construed as providing for a reasonable time ..." *Id.* at 51. The court held that if a contact "does not specify a definite time or prescribe conditions which shall determine the duration of the relation, the contract may be terminated by either party at will." *Id.* at 50.

In *Weilersbacher*, the owner of a beer distribution agency sued after his supplier of many years abruptly ended the relationship. *Weilersbacher*, 218 A.2d at 807. The two had an oral agreement in which the supplier promised to sell its products to plaintiffs. *Id.* The court ruled that, unless the contract indicated otherwise, a contract without a term of duration could be avoided at will. *Id.* This conclusion is consistent with Pennsylvania statute 13 Pa.C.S.A. § 2309, "[w]here the contract provides for successive performances but is indefinite in duration, it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party." 13 Pa.C.S.A. § 2309(b) (Purdon 2001). It is clear, then, that whether a contract has a term of duration or some other agreed upon condition is a dispositive fact in an oral contract dispute.

■ PCI contends that KPEC has admitted on deposition that the oral agreement had an indefinite term. But KPEC counters that it is relying on the "prescribed conditions" portion of the conclusion in *Slonaker*. KPEC lists those "conditions" that were necessary to the continuation of the contract with PCI as, *inter alia*, sending its mechanics to PCI schools, selling PCI products exclusively and maintaining sales in the territory. PCI argues that there were no such "prescribed conditions." This dispute raises a genuine issue of material fact and is not the proper subject of a summary judgment motion.

## B. Breach of Implied Covenant of Good Faith and Fair Dealing

In opposing summary judgment on its claim that PCI breached an implied covenant of good faith and fair dealing, KPEC states:

> The basis of KPEC's good faith and fair dealing argument is that PCI intentionally failed to inform KPEC of [its plan to terminate the agreement] with the intention of inducing KPEC to continue its efforts to build and expand PCI's dominance in the territories. While KPEC was working to uphold its end of the agreement, PCI was clandestinely plotting whether, and when, to terminate KPEC so that it could step in with little or no adverse repercussions of going direct.

■ Given that the question central to KPEC's breach of contract claim is whether PCI properly exercised its power to terminate the oral agreement with KPEC, the inclusion of the proposed claim of breach of a covenant of good faith and fair dealing adds nothing of consequence to the breach of contract claim. Accordingly, in light of the guidance recently provided by the Court of Appeals in *Northview, Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78 (3rd Cir.2000), it appears that the courts of Pennsylvania would not entertain KPEC's good faith and fair dealing claim as a separate cause of action. In *Northview* the court said:

In view of these precedents, we believe that if a plaintiff alleging a violation of the implied covenant of good faith also were to file a claim for fraud based on the same set of facts, Pennsylvania courts likely would decline to proceed with the claim alleging bad faith. Instead, Pennsylvania courts would consider the other claims in the plaintiff's complaint. Such an approach limits the use of the bad faith cause of action to those instances where it is essential. The covenant of good faith necessarily is vague and amorphous. Without such judicial limitations in its application, every plaintiff would have an incentive to include bad faith allegations in every contract action.

*Northview,* 227 F.3d at 92.

Because the actions forming the basis of KPEC's breach of contract claim and its good faith and fair dealing claim are essentially the same, KPEC cannot pursue both causes of action. Summary judgment should therefore be granted dismissing KPEC's claim that PCI breached an implied covenant of good faith and fair dealing.

## C. Quantum Meruit

There is no factual dispute that would affect this cause of action. The parties only disagree as to what legally qualifies as quantum meruit, and therefore this claim is ready for disposition. PCI states that there is no quantum meruit claim because KPEC was paid in full for all of the PCI equipment it sold. PCI also says it bought back left-over parts from KPEC's inventory, and paid KPEC a commission on sales PCI made in former KPEC territory for the first three months of 1999. According to PCI, no payments are outstanding. KPEC does not dispute that it was indeed paid in full for the *tangible* items it held or sold for PCI. But

KPEC also claims it should be paid for the *intangible* benefits PCI received when it took back its territory. One of those benefits is the good will that took KPEC many years to build for the benefit of PCI. In addition, KPEC contends that its promotional efforts on PCI's behalf created such a "lock" on the market for PCI products that it is now virtually impossible to sell any other brand in the territory. KPEC and PCI agree that KPEC began to distribute another formless concrete company's products shortly after their falling out, and the parties further agree that few items have been sold and that it will be an uphill battle to market a different brand in a region that has become so saturated with PCI products. The point upon which the parties disagree is whether the intangibles (strong market share and good will) may be recovered in quantum meruit.

Quantum meruit may be had when one party has a "reasonable expectation" of payment from the other party, and it would be unconscionable—i.e., a form of unjust enrichment—for the second party to receive the benefit of the first party's services without payment. *New Tech Voting Systems, Inc. v. Danaher Corp.,* 1996 WL 711272, 1996 U.S.Dist. LEXIS 18376 (E.D.Pa.1996) at *10. In the present case, KPEC claims quantum meruit because PCI has benefited from KPEC's marketing efforts on PCI's behalf. But it was in KPEC's best interest to market PCI's machines effectively. And "[u]njust enrichment will not be found where Plaintiff rendered services to advance its own interest." *Id.* Accordingly, KPEC has no valid quantum meruit claim.

## CONCLUSION

Plaintiff KPEC has produced evidence of a genuine issue of material fact sufficient to defeat defendant PCI's motion for

summary judgment on plaintiff's breach of contract claim. But summary judgment will be granted on (a) plaintiff's claim that defendant has breached an implied covenant of good faith and fair dealing and (b) plaintiff's quantum meruit claim.

An appropriate order accompanies this memorandum.

### ORDER

AND NOW, this 3rd day of May, 2001, upon consideration of defendant Power Curbers, Inc.'s consolidated motion for summary judgment, and plaintiff King of Prussia Equipment Corp.'s response, and for the reasons stated in the accompanying memorandum, it is hereby ORDERED that defendant's motion is GRANTED in part and DENIED in part as follows:

1. Defendant's motion is DENIED as to the claim for breach of contract.

2. Defendant's motion is GRANTED as to the claims for (a) breach of the implied covenant of good faith and fair dealing and (b) quantum meruit.